**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-31172

BAYOU FLEET, INC.,

Plaintiff-Appellant,

VERSUS

ELLIS A. ALEXANDER, ET AL,

Defendants

HOME PLACE BATTURE LEASING, INC.; NEAL CLULEE;
MARY CLULEE; N/C MATERIALS, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

November 28, 2000

Before KING, Chief Judge, PARKER, Circuit Judge, and FURGESON,[*]
District Judge.

ROBERT M. PARKER, Circuit Judge:

    Appellant Bayou Fleet, Inc. appeals from the district court's

order granting Mary and Neal Clulee's motion to amend the partial

_____

    [*]District Judge of the Western District of Texas sitting by
designation.

1

final consent judgment and the district court's final judgment dismissing Bayou Fleet's claims with prejudice. Bayou Fleet filed this action against Ellis Alexander; St. Charles Parish; the Parish's insurer, Coregis Insurance Company; Neal Clulee and his wife Mary Clulee ("the Clulees"); and the Clulees' two companies, Home Place Batture Leasing, Inc. ("Home Place") and N/C Materials, Inc. Bayou Fleet alleged that the defendants conspired to eliminate it from the sand pit business through challenges to its zoning status and through attempts to persuade authorities against issuing permits. Specifically, Bayou Fleet alleged that the defendants abused its constitutional rights through a civil conspiracy under 42 U.S.C. § 1983 and violated the Sherman Act, 15 U.S.C. §§ 1 and 2, and the Louisiana Unfair Trade Practices Act, LA. REV. STAT. ANN. § 51:1401, et seq., through their efforts to put its sand pit operation out of business.

Before trial, Bayou Fleet settled with Alexander, St. Charles Parish, and Coregis Insurance Company. In lieu of the settlement, the court entered a consent judgment, but later amended portions of the judgment that pertained to Bayou Fleet's zoning status. At the close of a non-jury trial, the district judge denied Bayou Fleet relief against the Clulees, holding that the Clulees were immune from liability under the *Noerr-Pennington* doctrine. *See Bayou Fleet, Inc. v. Alexander*, 68 F. Supp. 2d. 734, 744 (E.D. La. 1999). Bayou Fleet argues on appeal that the trial court effectively

2

denied its First Amendment right of access to the courts, abused its discretion by amending the consent judgment, and erred in its dismissal of the case under the *Noerr-Pennington* doctrine.

## I.

This case involves one of several disputes in a long feud between the Durant family and the Clulee family in Hahnville, Louisiana.[1] Both families own businesses alongside the Mississippi River in St. Charles Parish. The conflict in this case concerns the Clulees' attempts to curtail the Durants' sand pit operations. The Durants own plaintiff-appellant Bayou Fleet, and the Clulees own defendants-appellees Home Place and N/C Materials. Bayou Fleet and Home Place maintained the only active sand pits in Hahnville.[2]

In 1997, Ronald Adams Contractors, Inc. ("Adams") needed sand from the Mississippi River to construct roads in a nearby parish. Adams required a permit from the U.S. Army Corps of Engineers to dredge sand from the Mississippi and a permit from the LaFourche Basin Levee District Board of Commissioners ("the Levee Board") to operate a sand pit, in which the sand would be stored until trucks hauled it to the construction sites. After receiving bids from local sand pit operators, Adams chose Bayou Fleet.

---

[1] For a history of the controversy between the parties in this case, *see Bayou Fleet,* 68 F. Supp. 2d. at 736-743.

[2] A third sand pit, owned by the Giambelluca family, went out of business after a dispute between the Giambellucas and the Clulees. *See Giambelluca v. Parish*, 687 So.2d 424 (La. Ct. App. 5th Cir. 1996).

Adams filed for the necessary permits in March of 1997. Shortly thereafter, the Corps of Engineers received a number of complaints from residents near Bayou Fleet's property who opposed the operation of sand pits in the area. The neighbors complained that sand pit operations create health risks from air pollution, safety problems around the pits, and general nuisances from trucks traveling to and from the pits.

Robin Durant and a representative from Adams met with Ellis Alexander, a Parish Councilmember renowned for his oppositions to sand pits. Durant and Adams assured Alexander that all precautions would be taken to reduce the hazards caused by the sand pit operations. Alexander did not openly oppose Bayou Fleet's operations at their meeting.

In order to solicit business for his own sand pit, Neal Clulee set up a meeting with Adams to discuss the sale of sand from Homplace. At the meeting, Clulee informed Adams that he opposed the Bayou Fleet operation and that, unlike Bayou Fleet, "he could keep the local authorities satisfied." *Bayou Fleet*, 68 F. Supp. 2d at 738. Adams declined Mr. Clulee's offer.

Bayou Fleet claims that the alleged conspiracy between Alexander and the Clulees began on April 28, 1997. On this date, telephone records show that Neal Clulee made several attempts to contact Alexander. Shortly after the calls, Alexander informed Earl Matherne, Director of the Department of Planning and Zoning

4

for St. Charles Parish, that Alexander's constituents were objecting to Bayou Fleet's sand pit operations under the Parish's zoning ordinance.[3]   Matherne submitted the zoning issue to the Parish Attorney, who, after reviewing Bayou Fleet's business records, concluded that Bayou Fleet had not lost its non-conforming use status.

Bayou Fleet claims that the conspiracy continued from May through December of 1997, in which time Alexander argued before the Parish Council, the St. Charles Parish Coastal Zone Advisory Committee ("the Zoning Committee"), and the Levee Board against Bayou Fleet's sand pit operations.  Neal Clulee made over forty phone calls to Alexander's home during this time.  The telephone company's records show that many of these calls corresponded to Alexander's protests before local authorities.[4]

On May 29, 1997, at a regular Zoning Committee meeting, Alexander and the Clulee's lawyer, Joel T. Chaison, urged the committee to recommend that the Parish Council submit a letter of

---

[3]The zoning ordinance restricted the operation of sand pits, but allowed preexisting sand pits to continue in use as long as operations did not cease for six months.  Therefore, Bayou Fleet could continue its non-conforming use so long as it had not let its sand pit business cease operations for six months.

[4]The Clulees also attempted to sway public officials without Alexander's help.  On May 30, 1997 and July 3, 1997, Mary Clulee wrote to the Corps of Engineers protesting Adams' proposed dredging permit.  Mrs. Clulee claimed that Adams intended to dredge sand from a section of the river located immediately in front of the Clulees' property.  Despite Adams' assurance in June of 1997 that it would not dredge in front of the Clulee property, the Clulees maintained their opposition to the project.

objection to the Corps of Engineers concerning Adams' permit. Seven members of the public also spoke in opposition to Adams' project at the meeting. That same day, Clulee placed two telephone calls to the Alexander residence. Despite Alexander's protests, the Zoning Committee issued a recommendation to the Parish Council that supported Adams' project.

On June 2, 1997, at a regularly scheduled meeting of the Parish Council, Alexander proposed a resolution to issue a letter of objection to the Corps of Engineers urging the denial of Adams' permit application. Alexander suggested that, in the alternative, Adams should be required to take extra precautions to eliminate safety and health hazards by using Home Place's access ramp instead of Bayou Fleet's ramp, because the latter was located too close to residential neighborhoods. Because there was no road to the Clulees' ramp from Bayou Fleet's property behind the levee, the alternative proposal had the same effect as the letter of objection. Nonetheless, the Parish Council adopted Alexander's resolution. Prior to the Levee Board meeting, Neal Clulee made four calls to Alexander's home.

Alexander forwarded the Parish Council's objection to the Levee Board, which, in turn, denied Adams' permit. Without the Levee Board's permission to stockpile and move the sand over the levee, the Corps of Engineers could not issue a permit to dredge the sand out of the river. However, Adams was able to postpone a final decision from the Corps of Engineers until a second meeting

6

of the Levee Board.

On July 1, 1997, the Levee Board reconsidered its previous decision and granted Adams' operation permit. Alexander, Adams, and Durant attended the meeting. Although the Clulees were not present, Neal Clulee placed two calls to Alexander's residence before the meeting.

At the following Parish Council session, Alexander proposed a resolution to audit Bayou Fleet's sales tax returns. Although the Parish Council denied Alexander's proposition, Alexander was able to convince the St. Charles Parish Tax Collection Department to conduct a sales tax audit of Bayou Fleet, which resulted in no tax violations. During this period, the Clulees placed two more telephone calls to Alexander.

On July 14, 1997, Bayou Fleet filed the present lawsuit against Alexander, the Parish, the Clulees and the Clulees' companies, Home Place and N/C Materials.

Despite the fervent opposition by Alexander to Adams' operation, the Corps of Engineers issued Adams a permit to dredge on July 21, 1997.

Nonetheless, Alexander continued his assault against Bayou Fleet's sand pit operation. At the Parish Council meeting on September 8, 1997, he proposed a new Levee Law ordinance and a Special Legal Counsel resolution. The Council adopted the proposals over the veto of the Parish President. The Levee Law required the permission of the Parish Council before anyone was

7

allowed to cross over the levee. Violation of the ordinance was a criminal offense. The Special Legal Counsel resolution mandated the appointment of legal counsel to conduct an investigation into Bayou Fleet's zoning status. Alexander requested that Joel T. Chaisson, the Clulees' attorney, be appointed to the the position.

Bayou Fleet filed for an injunction and for declaratory relief in federal district court. The district court held that the Levee Law and the Special Legal Counsel resolution was submitted in retaliation to Bayou Fleet's law suit and "with a bad faith intent to injure Bayou Fleet." *Bayou Fleet Inc. v. Alexander*, 1997 WL 625492, *8 (E.D. La. Oct. 7, 1997). The court concluded that the ordinance and resolution violated the equal protection clause of the Fourteenth Amendment.

On March 12, 1998, Alexander filed a motion for summary judgment. The district court granted the motion and dismissed Bayou Fleet's claims against Alexander in his individual capacity under the *Noerr-Pennington* doctrine. The court held that Alexander was personally immune from liability for his appearances before the Zoning Committee and the Levee Board. *See Bayou Fleet, Inc. v. Alexander*, 26 F. Supp. 2d 894, 897 (E.D. La. 1998).

The district court's ruling on the Parish Council ordinances and the court's dismissal of the suit against Alexander prompted settlement negotiations between the remaining parties. The defendants, with the exception of the Clulees, reached a settlement

on December 9, 1998.  The settlement required the Parish Council to recognize Bayou Fleet's non-conforming use status.  The district judge signed the consent judgment on January 21, 1999.

Before the parties reached their settlement agreement, the Clulees filed a mandamus action in state court to challenge Bayou Fleet's operations under the zoning restrictions.  In response to the federal court's consent judgment, the Clulees filed a motion to amend or alter the judgment, claiming that the federal judge's consent decree affected their rights in state court.  The district judge granted the Clulees' motion.  Bayou Fleet argues on appeal that the court abused its discretion by amending the consent judgment.

On February 12, 1999, ten days before trial, the district judge ordered Bayou Fleet and the Clulees to submit briefs on whether the Clulees were entitled to *Noerr-Pennington* immunity. Bayou Fleet argued that because the Clulees did not timely raise *Noerr-Pennington* as an affirmative defense, the issue was waived. The Clulees moved for summary judgment, but the court declined to rule on the motion until the conclusion of trial.  Bayou Fleet and the Clulees proceeded to trial before the district judge on February 22, 1999.  The trial court entered its judgment dismissing Bayou Fleet's case for reasons of *Noerr-Pennington* immunity on September 29, 1999.

II.

9

A. Right of Access to Courts

In its first point of error, Bayou Fleet claims that it was denied its First Amendment right of access to the courts because of a law clerk's improper participation in the non-jury trial. Bayou Fleet claims that the law clerk directed the district judge during the course of proceedings to the extent that the law clerk effectively presided over the trial. It argues that the law clerk's participation denied it meaningful access to the courts.[5]

Bayou Fleet points to several instances in the trial record that it claims are representative of the law clerk's leading role in the proceedings. First, the law clerk interrupted the judge regarding the time when the judge could rule on a motion. After the judge answered an attorney's question regarding the time when he would rule on a motion, the law clerk interjected stating, "Judge, there is no way we can rule on it by 1:30 today because I

_____

[5]Bayou Fleet cites several cases from this Court where either counsel or the judge should have been disqualified because of a law clerk's special knowledge of a case. *See Hall v. Small Business Administration*, 695 F. 2d 175 (5th Cir. 1983) (holding that a law clerk's continuing participation with a judge in a case in which her future employer was counsel gave rise to an appearance of impartiality); *Fredonia Broadcasting Corp. v. RCA Corp.*, 569 F.2d 251 (5th Cir. 1978) (concluding that counsel had an unfair advantage because he worked as the judge's law clerk in an earlier trial of the case); *Kennedy v. Great Atlantic & Pacific Tea Co., Inc.*, 551 F.2d 593 (5th Cir. 1977) (holding that a law clerk could not gain special knowledge of a case through his own investigation of the facts). The law clerk in this case did not have special knowledge of the facts that would raise an appearance of impartiality. These cases do not address the issue of whether a law clerk's participation at trial precludes a litigant's right of access to the courts.

am sitting in the courtroom right now." To which the judge replied to counsel, "It will have to be later."

Second, Bayou Fleet complains that the law clerk questioned witnesses and corrected the judge's ruling on the defendants' motion for summary judgment. The judge stated that the motion for summary judgment was denied, and the law clerk interrupted stating, "Judge, it's not the merits that are denied, it's denied because they set it after trial. The merits of the motion will be addressed in the opinion." Bayou Fleet argues that this exchange clearly indicates that the law clerk was ruling on the motion instead of the judge.

Finally, Bayou Fleet points out that the judge interrupted court for two days so the law clerk could travel out of town to visit her mother. Bayou Fleet alleges that the court's decision to postpone the trial suggests that the judge was incapable of presiding over the trial without the law clerk present.

The Clulees insist that Bayou Fleet has taken the law clerk's behavior out of context. The Clulees assert that the judge intervened and ruled on objections throughout the trial without the clerk's assistance. They claim that, in any event, after two years of pretrial proceedings that culminated in several published and unpublished opinions, Bayou Fleet cannot convincingly argue that it was denied access to the courts.

Access to the courts is a constitutionally protected fundamental right and one of the privileges and immunities awarded

11

citizens under Article IV and the Fourteenth Amendment. *See Chambers v. Baltimore & Ohio Railroad,* 207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907). The First Amendment right to petition the government has as one aspect the right of access to the courts. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Wilson v. Thompson,* 593 F.2d 1375 (5th Cir. 1979); *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 336, 9 L.Ed.2d 405 (1963); *Coastal States Marketing, Inc. v Hunt*, 694 F.2d 1358, 1363 (5th Cir. 1983). Judge Thornberry's writing in *Ryland v. Shapiro*, 708 F.2d 967 (1983), serves to guide our analysis today. Relying on *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) and *Rudolph v. Locke,* 594 F.2d 1076, 1078 (5th Cir. 1979), we learn in *Ryland* that

> A mere formal right of access to the courts does not pass
> constitutional muster. Courts have required that the
> access be "adequate, effective, and meaningful."

We therefore have reviewed this record to determine whether the unusual and troubling participation in this non-jury trial by the judge's law clerk served to deny *Bayou Fleet* meaningful access to the courts. Our review is further guided by the recognition that Article III of the constitution vesting power in the Federal Courts can only be read to vest the power of the court in its officeholder - the judge. Indeed the judge is the only person involved in the trial of cases in Federal Court who has taken an

12

oath pursuant to Article III.  It follows that the constitution requires those functions traditionally comprising the act of judging be performed by the judge.

Our review of the record persuades us that *Bayou Fleet* was not denied meaningful access to the courts.  The judge was engaged in the pretrial stage and the trial itself. He questioned both witnesses and lawyers during the trial, ruled on the evidence and made those decision that were necessary for a traditional trial. We therefore, can not say that in this case that staff usurped the judge's role in the decision-making process of the trial.  The involvement of the judge's law clerk in the trial was unfortunate and the judge should take whatever action is necessary to make sure that it does not recur.

## B. The Consent Judgment

Before Bayou Fleet, the Parish, Alexander and Coregis Insurance Company reached their settlement agreement, the Clulees filed suit in state court to determine whether Bayou Fleet properly retained its zoning status.  After the district judge signed the consent judgment, Bayou Fleet introduced the judgment in state court claiming that the proceeding was barred by the doctrine of res judicata.  The Clulees filed a motion in federal district court to amend or alter the consent judgment.  The district court granted the Clulees' motion.  Bayou Fleet alleges that the court abused its discretion by amending the judgment.

13

A consent judgment, also known as a consent decree, is freely negotiated by the parties and has the full effect of res judicata. *See United States v. City of Miami*, 664 F.2d 435, 439 (5th Cir. 1981) (en banc)(Rubin, J.). Because a consent judgment has a continuing affect on the rights of litigants, courts are required to ascertain whether the parties agreement "represents a reasonable factual and legal determination based on the facts of the record . . .." *Id.* at 441. "A consent decree must arise from the pleaded case and further the objectives of the law upon which the complaint is based." *League of United Latin Amer. Citizens v. Clements*, 999 F.2d 831, 846 (5th Cir. 1993) (citing *Local No. 93, Int'l Ass'n of Firefighter v. City of Cleveland*, 478 U.S. 501, 525 (1986)). When litigants reach a settlement that also affects third parties, "the court must be satisfied that the affect on them is neither unreasonable nor proscribed." *City of Miami*, 664 F.2d at 441. We review the approval or denial of a consent judgment for abuse of discretion. *See Williams v. City of New Orleans*, 729 F.2d 1554, 1558 (5th Cir. 1984).

Bayou Fleet argues that the zoning issue was resolved in the court's October 1997 order, in which the judge held that the Parish Council's Levee Law and Special Legal Counsel resolution was unconstitutional. Bayou Fleet also claims that the Clulees should not be able to attack the consent judgment simply because they refused to approve the final settlement.

14

A consent judgment must be founded on the legal and factual issues raised in the pleadings. *League of United Latin Amer. Citizens*, 999 F.2d at 846. Bayou Fleet petitioned the district court for relief under section 1983 and antitrust laws and for an injunction and declaratory relief regarding the Parish Council ordinances. The parties did not ask the court to resolve the zoning issue in their pleadings, and the court's October 1997 order did not determine whether Bayou Fleet retained its zoning status.[6]

Courts must also examine the effect of a consent judgment on third parties. *See Local No. 93, Int'l Ass'n of Firefighter*, 478 U.S. at 529. Louisiana law allows any person to file a civil action to enforce compliance with zoning restrictions. *See* LA. REV. STAT. ANN. § 9:5625 (1997). Even though the Clulees participated in the negotiation process, they did not agree to the settlement terms. Instead, they filed suit in state court to determine the zoning dispute. Just because the Clulees participated in settlement negotiations and refused to acquiesce to the settlement terms does not alleviate the district court's duty to assess the judgment's affect on their rights. By signing the consent

---

[6]The district court's order states, "The evidence supports the Parish Council's conclusion that Bayou Fleet did not lose its non-conforming status." *See Bayou Fleet v. Alexander*, 1997 WL 625492, *8 (E.D. La. 1997). Put into context, the court's assertion indicates that the defendants did not provide adequate reasons why special legal counsel should be appointed since the Parish Council had previously investigated Bayou Fleet's zoning status. *See id*. The court did not reach a legal conclusion concerning the zoning ordinance's applicability to Bayou Fleet.

judgment, the district judge frustrated the Clulees' right to file an action in state court to enforce the zoning restrictions. Because the consent judgment adversely affected the rights of non-settling third parties, the district court did not abuse its discretion by amending the consent judgment.

## C. *Noerr-Pennington* Immunity

The *Noerr-Pennington* doctrine confers immunity to private individuals seeking anticompetitive action from the government. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). *See also California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972) (extending *Noerr-Pennington* protection to petitioning activities aimed at state and federal agencies and courts); *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991) (granting *Noerr-Pennington* immunity for efforts to influence local governments). *Noerr-Pennington* immunity applies to any concerted effort to sway public officials regardless of the private citizen's intent. *See Pennington,* 381 U.S. at 670. Although the Supreme Court has limited its discussion of *Noerr-Pennington* immunity to cases involving antitrust litigation, this Court has extended the *Noerr-Pennington* doctrine to include claims under section 1983. *See Video Int'l Prod., Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988), *cert. denied*, 491 U.S. 906

16

(1989).[7]

The district court held that the *Noerr-Pennington* doctrine was not an affirmative defense and that the issue of immunity could be raised at any time. The court further concluded that the Cluelees were immune under *Noerr-Pennington* for contacting Alexander concerning Alexander's attempts to thwart Bayou Fleet's sand pit operations. The district court therefore dismissed Bayou Fleet's section 1983, Sherman Act, and Louisiana Unfair Trade Practices Act claims. *See Bayou Fleet v. Alexander*, 68 F. Supp. 2d 734 (E.D. La. 1999).

Bayou Fleet argues on appeal that *Noerr-Pennington* immunity is an affirmative defense, which was waived because the Cluelees failed to timely assert it under Rule 8(c) of the Federal Rules of

---

[7]*Noerr-Pennington* immunity does not stem solely from the First Amendment; rather, it is inextricably associated with interpretations of the Sherman Act. *See Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358 (5th Cir. 1983). The Tenth Circuit has pointed out that the *Noerr-Pennington* doctrine should not describe immunity that arises only from the First Amendment right to petition. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 888-91 (10th Cir. 2000) ("While we do not question the application of the right to petition outside of antitrust, it is a bit of a misnomer to refer to it as the *Noerr-Pennington* doctrine . . .."). However, where an individual's conduct raises *Noerr-Pennington* immunity under antitrust law, the same conduct "is also out of the scope of section 1983 liability." *Video Int'l Prod., Inc.*, 858 F.2d at 1084. The Cluelees may be entitled to immunity both under the *Noerr-Pennington* doctrine for purposes of antitrust liability and the First Amendment for purposes of Bayou Fleet's section 1983 claim. Because the same facts and legal analysis apply to both theories of immunity, we will not make a distinction between the two.

Civil Procedure. Bayou Fleet also contends that, in the alternative, the *Noerr-Pennington* doctrine does not apply to the behavior exhibited by the Clulees.

1. Waiver of the *Noerr-Pennington* Affirmative Defense

As we recently held in *Acoustic Systems, Inc. v. Wenger Corp.*, 207 F.3d 287 (5th Cir. 2000), the *Noerr-Pennington* doctrine should be raised as an affirmative defense.[8] Generally, a party's failure to raise an affirmative defense in its first responsive pleading results in waiver. *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986). "However, where 'the matter is raised by the trial court [or the litigants] that does not result in unfair surprise, technical failure to comply precisely with Rule 8(c) is not fatal,' and in such a situation a court may hold that the defense is not waived." *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (1998) (quoting *Lucas*, 807 F.2d at 417). An affirmative defense is not waived if it is raised at a "pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." *Chambers v. Johnson*, 197 F.3d 732, 735 (5th Cir. 1999) (quoting *Lucas*, 807 F.2d at 418). We therefore look to the record to ascertain whether the trial court

---

[8]In *Acoustic Systems*, we stated that the *Noerr-Pennington* doctrine does not provide persons complete immunity from suit; rather, the "doctrine provides only an affirmative defense . . .." *Acoustic Systems, Inc.*, 207 F.3d at 296. The trial court erred in holding that *Noerr-Pennington* immunity should not be raised as an affirmative defenses.

raised *Noerr-Pennington* at a pragmatically sufficient time and whether Bayou Fleet was prejudiced by the delay in raising the defense. *See id.*

*Noerr-Pennington* was first raised by Ellis Alexander in his motion for summary judgment filed on January 2, 1998. Alexander claimed that he was entitled to immunity for his personal efforts to persuade the Levee Board, the Zoning Committee, the Army Corps of Engineers and the Parish Council to curtail Bayou Fleet's sand pit operations. Bayou Fleet submitted a memorandum on the *Noerr-Pennington* issue in response to Alexander's motion. The district court dismissed Bayou Fleet's suit against Alexander in its September 1998 order. *See Bayou Fleet v. Alexander*, 26 F. Supp. 2d 894 (E.D. La. 1998). Hence, Bayou Fleet was aware that *Noerr-Pennington* was an issue in the case at least by January 2, 1998.

After its order dismissing Alexander in his personal capacity, the Clulees raised the issue for the second time in the Pre-Trial Order dated February 4, 1999, approximately eighteen days before trial. Although Bayou Fleet objected to immunity as a contested issue of law, it does not appear that the court ever ruled on the objection. On February 11, 1999, the district judge requested each party to submit a brief on the applicability of *Noerr-Pennington*. The Clulees then filed a motion for summary judgment on the basis of *Noerr-Pennington* immunity. Bayou Fleet also submitted its memorandum claiming either that *Noerr-Pennington* had been waived or

19

that it did not apply.

The non-jury trial began on February 22 and continued through March 1. During trial, the Clulees sought to amend their original answer to include the *Noerr-Pennington* issue, but the trial court denied their motion. The court specifically stated that its ruling was not a finding that the issue had been waived.

Bayou Fleet relies on *Haskell v. Washington Township*, 864 F.2d 1266, 1273 (6th Cir. 1988), in which the Sixth Circuit found that the trial court could not raise *sua sponte* a statute of limitations defense after three years of litigation. Unlike the litigant in *Haskell*, Bayou Fleet knew that *Noerr-Pennington* was an issue in the case when Alexander filed his motion for summary judgment almost one year before trial. Bayou Fleet's argument that it was unfairly surprised by the Clulees' attempts to raise immunity in the Pretrial Order is untenable.

Bayou Fleet argues that its inability to conduct discovery concerning the "sham" exception to the *Noerr-Pennington* doctrine resulted in prejudice. At no time after the issue was raised in the Pretrial Order did Bayou Fleet move for a continuance to conduct discovery concerning the "sham" exception. Instead, Bayou Fleet argued in its pretrial memorandum that it was prejudiced by the timing of the immunity issue, but it did not state how. On appeal, Bayou Fleet claims for the first time that they were not given the opportunity to conduct adequate discovery. Given the

20

fact that Bayou Fleet knew *Noerr-Pennington* was a potential issue throughout most of the discovery process, we find no evidence that Bayou Fleet was prejudiced. Thus, the trial court did not err by addressing the *Noerr-Pennington* issue.

## 2. Applicability of the *Noerr-Pennington* Doctrine
## to the Cluelees

Bayou Fleet argues, in the alternative, that the *Noerr-Pennington* doctrine does not apply to the Clulees' lobbying efforts. Bayou Fleet points to the courts October 1997 order in which the district court concluded that Alexander's proposals were proffered in retaliation to Bayou Fleet's law suit. Bayou Fleet contends that *Noerr-Pennington* does not apply to retaliatory behavior or conduct in furtherance of a conspiracy. Specifically, Bayou Fleet claims that the *Noerr-Pennington* doctrine should not protect defendants who retaliate against plaintiffs for exercising their First Amendment right to petition the courts.

The Supreme Court has clearly stated that efforts to influence public officials will not subject individuals to liability, even when the sole purpose of the activity is to drive competitors out of business. *See Pennington*, 381 U.S. at 670. The Court has allowed only one exception to the *Noerr-Pennington* doctrine--the "sham" exception. *See Omni Outdoor Advertising, Inc.*, 499 U.S. at

21

380.[9]

The "sham" exception involves attempts to influence public officials for the sole purpose of expense or delay. *See Omni Outdoor Advertising, Inc.*, 499 U.S. at 380. The exception applies to defendants who use the process as an anticompetitive weapon, rather than those who genuinely seek to achieve an intended result. *See id*. at 381. The evidence must show that a defendant's lobbying activities were "objectively baseless" for the "sham" exception to apply. *Professional Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993); *Brown & Root, Inc. v. Louisiana State AFL-CIO*, 10 F.3d 316, 324 (5th Cir. 1994). Lobbying activity is objectively baseless if a reasonable private citizen could not expect to secure favorable government action. *See Professional Real Estate Investors*, 508 U.S. at 60 ("[T]he lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits").

Bayou Fleet argues that the Clulees lobbied local officials in retaliation to Adams' contract with Bayou Fleet and, later, Bayou

---

[9]Bayou Fleet urges this Court to ignore the *Noerr-Pennington* doctrine because the defendants were allegedly involved in a civil rights conspiracy. A conspiracy exception to *Noerr-Pennington* immunity has been explicitly rejected by the Supreme Court unless the conspiracy "reaches beyond mere anticompetitive motivation." *Omni Outdoor Advertising, Inc.*, 499 U.S. at 383. Bayou Fleet did not allege that the Clulees motives included anything other than their desire to put its sand pit out of business.

22

Fleet's lawsuit. Bayou Fleet does not assert that the Clulees' endeavors were objectively unreasonable. To the contrary, the evidence shows that a reasonable private citizen could expect to secure favorable government action. *See id.* The Clulees contacted a Parish Councilmember and wrote letters to the Army Corps of Engineers in hope to deny Adams permits and revoke Bayou Fleet's non-conforming zoning status. Their efforts resulted in the Parish Council's adoption of a letter of objection to Adams' dredging permit, a review of Bayou Fleet's zoning status, and the approval of the Levee Law and Special Legal Counsel resolution. Because the Clulees achieved favorable results, their endeavors were, by definition, reasonable. *See id.* at 61 n.5. The "sham" exception therefore does not exclude the Clulees from *Noerr-Pennington* protection.

Bayou Fleet asks this Court to create a new exception to the *Noerr-Pennington* doctrine based on a defendant's retaliatory conduct. Bayou Fleet claims that the Clulees' should not be protected under *Noerr-Pennington* because their lobbying activities affected its First Amendment right to petition the courts for relief. Bayou Fleet claims that *Noerr-Pennington* cannot be used to illegally abridge the rights of other citizens. The Supreme Court has not established a separate exception to the *Noerr-Pennington* doctrine for retaliatory intent, and we decline to create a new exception here.

23

In *California Motor Transport*, the Supreme Court held that First Amendment rights may not be used to deter competitors "from having 'free and unlimited access' to the agencies and courts." 404 U.S. at 515. The Court concluded that attempts to deter competitors from petitioning the courts and government agencies were not protected under *Noerr-Pennington*. *See id.* However, the Court's holding in *California Motor Transport* is limited to the confines of the "sham" exception. *See Omni Outdoor Advertising, Inc.*, 499 U.S. at 1355. As a result, *Noerr-Pennington* applies to all genuine lobbying efforts, despite subjective intent and the net effects on a competitor's First Amendment rights. *See Professional Real Estate Investors*, 508 U.S. at 57. Thus, retaliatory lobbying efforts are not per se excluded from *Noerr-Pennington* protection unless the "sham" exception applies.

Bayou Fleet does not argue and the record does not show that the Clulees lobbying efforts were objectively unreasonable. We therefore conclude that the district court's dismissal of Bayou Fleet's section 1983, Sherman Act, and Louisiana Unfair Trade Practices Act claims was not error. *See Omni Outdoor Advertising, Inc.*, 499 U.S. at 384 (applying *Noerr-Pennington* to dismiss an antitrust claim under state law); *Video Int'l Prod., Inc.*, 858 F.2d at 1084 (applying *Noerr-Pennington* to shelter individuals from liability under section 1983).

24

III.

In sum, we conclude that the law clerk's role in the non-jury trial did not affect Bayou Fleet's right of meaningful access to the courts.  We also affirm the district court's order granting the amendments to the consent judgment and the court's dismissal of Bayou Fleet's case against Mary and Neal Clulee pursuant to the *Noerr-Pennington* doctrine.

AFFIRM