# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 20, 2010

No. 10-20355
Summary Calendar

Lyle W. Cayce
Clerk

SYLVESTER TALBERT, Individually and on Behalf of All Others Similarly
Situated; SHERYL WANT, Individually and On Behalf of All Others
Similarly Situated,

Plaintiffs - Appellants

v.

AMERICAN RISK INSURANCE COMPANY, INC.; SAFEER HASSAN;
SAROSH AHMED,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-1023

Before JOLLY, GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Sylvester Talbert and Sheryl Want ("the plaintiffs") appeal the summary

judgment in favor of American Risk Insurance Company, Inc., Safeer Hassan,

and Sarosh Ahmed (collectively, "ARI"), denying relief on their claims for

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-20355

overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). We AFFIRM.

I.

Talbert was employed by ARI as an assistant claims adjuster from September 29, 2008, until February 3, 2009. His duties included handling claims made against insurance policies underwritten by ARI. Most of the claims that he handled related to property damage sustained by homeowners as a result of Hurricane Ike. ARI classified Talbert as an administrative employee who was exempt from the overtime requirements of the FLSA.

Want worked for ARI as a claims adjuster from October 21, 2008, through January 5, 2009. She also handled claims against policies underwritten by ARI, and most of the claims that she handled related to property damage sustained by homeowners as a result of Hurricane Ike. ARI classified Want as an independent contractor.

Talbert filed suit against ARI under section 216(b) of the FLSA, alleging that ARI failed to pay him overtime compensation. Want consented to become a party to the action. ARI filed an answer denying the allegations of the complaint. After the discovery deadline had passed, ARI moved for summary judgment, asserting that Talbert was an administrative employee who was exempt from the FLSA's overtime requirements and that Want was not entitled to overtime compensation because she was an independent contractor. In their response in opposition to the summary judgment motion, the plaintiffs argued that ARI's affirmative defenses had been waived because they had not been specifically pleaded, as required by Rule 8(c) of the Federal Rules of Civil Procedure.

ARI filed a motion to amend its answer to assert the affirmative defense that Talbert is an exempt administrative employee. In the motion, ARI argued that the amendment should be allowed because the plaintiffs were clearly aware

2

No. 10-20355

that ARI was relying on the defense, inasmuch as it was discussed in the written settlement offer made prior to filing the answer and was subsequently disclosed in ARI's responses to the plaintiffs' interrogatories. The motion was referred to a magistrate judge for resolution. The plaintiffs opposed the amendment, arguing that ARI had waived the affirmative defense and that leave to amend should be denied because the request was untimely. The magistrate judge weighed ARI's delay in seeking to amend the answer against the lack of prejudice to the plaintiffs, and granted leave to amend. The plaintiffs did not seek district court review of the magistrate judge's order and did not move for a continuance to conduct discovery on the affirmative defense.

The district court granted summary judgment for ARI. It held that the plaintiffs' argument that ARI waived the affirmative defense that Talbert was subject to the administrative employee exemption under the FLSA was unavailing because ARI had amended its answer to assert that defense. The court further held that Talbert was exempt from the FLSA's overtime requirements because he was an administrative employee; and that Want was an independent contractor and not entitled to overtime compensation. The plaintiffs timely appealed.

## II.

The plaintiffs first argue that the district court abused its discretion by permitting ARI to amend its answer to add the affirmative defense that Talbert was exempt from the overtime requirements of the FLSA after the deadline to file motions for leave to amend pleadings had passed and after ARI had filed a motion for summary judgment on the defense that it failed to plead. They therefore contend that the district court erred by holding that ARI had not waived the defense that Talbert is an exempt administrative employee. They contend further that, even if ARI did not waive that affirmative defense, the district court erred in granting summary judgment because there are genuine

issues of material facts as to whether Talbert qualified for the administrative exemption and whether Want was an independent contractor. We address the amendment/waiver issue first, and then turn to consider the FLSA status of Talbert and Want.

## A.

Rule 8(c)(1) of the Federal Rules of Civil Procedure requires a litigant to "affirmatively state any avoidance or affirmative defense." FED. R. CIV. P. 8(c)(1). "Generally, a party's failure to raise an affirmative defense in its first responsive pleading results in waiver." *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000). "However, where the matter is raised by the trial court [or the litigants and] does not result in unfair surprise, technical failure to comply precisely with Rule 8(c) is not fatal, and in such a situation a court may hold that the defense is not waived." *Id.* (internal quotation marks and citations omitted). "An affirmative defense is not waived if it is raised at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." *Id.* (internal quotation marks and citation omitted).

An exemption must be asserted as an affirmative defense to a claim under the FLSA. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). As the plaintiffs concede, this court has never held that independent contractor status is an affirmative defense to a claim for overtime compensation under the FLSA, but they urge us to so hold in this case.

The plaintiffs argue that ARI waived its affirmative defenses by failing to assert them in its original answer and, therefore, the *district court* abused its discretion by permitting ARI to amend its answer. However, as we have noted, ARI's motion for leave to amend was referred to a magistrate judge for resolution. The plaintiffs did not seek district court review of the magistrate judge's order granting leave to amend, as required by Federal Rule of Civil Procedure 72(a). *See* FED. R. CIV. P. 72(a) ("A party may not assign as error a

No. 10-20355

defect in [a magistrate judge's order on a nondispositive pretrial matter] not timely objected to."). Accordingly, their argument that it was an abuse of discretion to grant ARI leave to amend its answer is not properly before us. *See Lehmann v. GE Global Ins. Holding Corp.*, 524 F.3d 621, 624 n.4 (5th Cir. 2008) (stating that if appellant's briefing were construed as a challenge to the magistrate judge's denial of leave to amend the complaint, that argument was not properly before the court because appellant "failed to appeal the magistrate judge's order to the district court"). Further, because the magistrate judge granted ARI leave to amend its answer, and the plaintiffs did not file objections to that order, the district court did not err by holding that ARI had not waived its defense that Talbert is an administrative employee who is exempt from the FLSA's overtime compensation requirements.

We need not address the plaintiffs' contention that independent contractor status is an affirmative defense to a claim for overtime compensation under the FLSA because, even if we assume that it is, ARI did not waive the defense. ARI asserted, in both its original and amended answers, that Want was an independent contractor and thus was not entitled to payment of overtime compensation under the FLSA.

We now turn to consider whether the district court properly granted summary judgment for ARI on the plaintiffs' claims for overtime compensation under the FLSA.

B.

The FLSA generally requires payment of overtime compensation for work in excess of forty hours per week. 29 U.S.C. § 207(a)(1). However, there are exceptions to that general requirement. At issue in this case is the exemption for employees "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "The decision whether an employee is exempt from the FLSA's overtime compensation provisions under 29 U.S.C. § 213(a)(1),

5

No. 10-20355

is primarily a question of fact . . . ." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330 (5th Cir. 2000). "However, the ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question[] of law." *Id.* "We construe FLSA exemptions narrowly; and the burden of proof lies with the employer." . *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006). We review the grant of a summary judgment motion *de novo*, applying the same standard as the district court. *Id.* at 582.

The Secretary of Labor has promulgated regulations which define the term "employee employed in a bona fide administrative capacity" as an employee who is:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . .;

> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.

1.

It is undisputed that Talbert was paid a salary in excess of $450 per week — his salary was $32,000 per year. Talbert argues that ARI treated him as an hourly employee because he earned compensatory time off when he worked more than forty hours per week, and was required to use compensatory time when he worked less than forty hours a week. He contends that the use of compensatory time is clear evidence that ARI did not intend to pay him on a salary basis, and that compensatory time off is only permitted for use by public agencies, citing 29 U.S.C. § 207(o). He therefore contends that ARI's use of compensatory time caused ARI to lose the exemption, citing 29 C.F.R. § 541.602(a) ("an exempt

employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked"); and 29 C.F.R. § 541.603(a) ("An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis").

Talbert's arguments are without merit.  He cites no authority for his contention that Section 207(o), which authorizes governmental employers to provide compensatory time off in lieu of the payment of overtime compensation to non-exempt employees, prohibits private employers from using compensatory time for exempt, salaried employees.  There is no evidence submitted that Talbert was not always paid his full salary.  Further, he presented no evidence that ARI's use of compensatory time resulted in any improper deductions from his salary.

2.

With respect to the second element, it is undisputed that all of Talbert's work was in the office and was directly related to the general business operations of ARI.

3.

The primary focus of the dispute is whether Talbert's "primary duty include[d] the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(3).  "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a).  "The term 'matters of significance' refers to the level of importance or consequence of the work performed."  *Id*.

The regulations, which contain examples of jobs that fall within the administrative exemption, provide that insurance claims adjusters "generally

meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation." 29 C.F.R. § 541.203(a)

In support of its motion for summary judgment, ARI submitted an affidavit of Kyle La Croix, its Vice President of Commercial Lines, in which he described Talbert's duties as follows:

> As an in-house claims adjuster, Talbert's duties included: interviewing the insureds, reviewing the factual information from contractors and field adjusters to prepare damage estimates, making recommendations regarding the coverage of the claims, modifying reserves (subject to review). Talbert would also negotiate settlements and make recommendations to the claims manager regarding the claim. If litigation ensued, Talbert as an assistant claims adjuster would be expected to participate and make recommendations regarding the litigation; however, Talbert was terminated less than six months after he was hired and therefore he was never required to participate in litigation.

The affidavit stated further that

> ARI depended on Talbert, as a licensed insurance adjuster, to use his independent judgment and discretion to make recommendations concerning ARI's response to their insured's claims. In the vast majority of cases, the recommendations of ARI's assistant claims adjusters are approved by the claims manager.

In opposition to the motion for summary judgment, Talbert argued that he was not required to exercise discretion or independent judgment. In his affidavit, Talbert stated:

> 5.     In handling these claims, coverage was typically a foregone conclusion.

6.   I rarely interviewed the insured when processing claims. In fact, appraisers hired by Defendants would typically interview the insured, take pictures of the property damage, and take whatever measurements were necessary. I usually only reviewed the statements and pictures taken by the appraisers and determined whether the measurements complied with the applicable standards.

7.   I had no independent authority to settle claims. Every claim handled by me during my employment with Defendants was subject to review by Fred Behzadi who had the authority to settle the claim.

8.   I was prohibited from speaking to any attorney retained by a policy holder. In fact, if an attorney became involved, I was instructed to forward the claim to Fred Behzadi who would review it and take over further handling of the claim.

9.   If a policyholder sued my employer over a claim, I was not involved in developing or approving litigation strategy, hiring experts or negotiating settlement.

10.   Throughout my employment with Defendants, I spent very little time interacting with policyholders and was, at all times, closely supervised by my employer. When I did interact with policyholders, it was only because they were upset that they had not been paid for their losses.

Although Talbert asserts that "coverage was typically a foregone conclusion" for the claims that he handled during his brief employment with ARI, he does not deny that it was part of his job to make recommendations regarding coverage if coverage was at issue. The fact that Talbert was not able to settle claims on his own, but had to seek approval from his supervisor, does not preclude his classification as an exempt administrative employee. *See* 29 C.F.R. § 541.202(c) ("The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action."); *see also Cheatham*, 465 F.3d at 585 (stating

that "the requirement that Allstate adjusters must consult with manuals or guidelines does not preclude their exercise of discretion and independent judgment"). Although Talbert asserts that he rarely interviewed policyholders, he does not dispute ARI's evidence that interviewing policyholders was part of his job. And, although Talbert was instructed not to talk to policyholders' attorneys, he does not challenge ARI's evidence that he would have been expected to assist in litigation of claims if that had become necessary during the time that he was employed by ARI.

Based on our consideration of all of the summary judgment evidence, we agree with the district court that Talbert's duties involved the exercise of discretion and independent judgment. Accordingly, the district court did not err by holding that, as a matter of law, Talbert is subject to the administrative exemption and therefore not entitled to overtime compensation.

C.

Having determined that Talbert was exempt from the overtime compensation requirements of the FLSA, we now turn to consider whether Want was an employee of ARI within the meaning of the FLSA, or an independent contractor and thus not subject to the FLSA's overtime compensation requirements.

"To determine if a worker qualifies as an employee [under the FLSA], we focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008). "The contractual designation of the worker as an independent contractor is not necessarily controlling." *Thibault v. Bellsouth Telecommunications, Inc.*, 612 F.3d 843, 845-46 (5th Cir. 2010).

> To aid us in this inquiry, we consider five non-exhaustive factors:
> (1) the degree of control exercised by the alleged employer; (2) the

extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. No single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind.

*Hopkins*, 545 F.3d at 343 (citations omitted).

In his affidavit submitted in support of ARI's motion for summary judgment, La Croix stated:

4. ARI hired Sheryl Want as a contract claims adjuster. She worked for ARI for approximately 12 weeks during which time she was paid an hourly rate of $18.00 /hour.

5. In Texas, claims adjusters are licensed by the Texas Board of Insurance. ARI did not pay for the licensing. Any independent contractor would have to provide proof of their current license in order to be engaged. The claims adjusters hired by ARI as independent contractors, such as Want, were expected to do their job with little or no day to day supervision by ARI personnel. ARI expected Want to handle the files assigned to her and to make a recommendation to the ARI claims manager with regard to coverage and the amount of the claim, with little or no day to day supervision.

6. Although ARI preferred that its independent contractors work during normal working hours, the independent contractors, as opposed to employees were allowed to set their own hours. Moreover, Want and the other independent contractors were free to work for other insurance companies at the same time the[y] performed services for ARI. Want represented to ARI that she had previously worked as an independent contract adjuster for a number of years working for various insurance companies. . . .

7. Want often came in later than ARI employees, took long or late lunches and set her own hours. Want was not required to work in the ARI offices; however, because she was required to update the information related to a claims file into the Simple Insure program

on the ARI computers, as a practical matter she spent much of her time in the ARI offices.

8. The position of claims adjuster did not require any specialized tools. It did, however, require that Want enter information concerning the claims she [was] handling into the computer program contained on ARI's computer.

9. ARI paid the independent contractors that worked for them, like Sheryl Want, on an hourly basis. ARI did not dictate the number of hours Want was required to work, did not set her schedule, nor did it prohibit her from working for other insurance companies. Based on the resume that Want provided ARI, Want had worked as an independent contractor for multiple companies in the past. Want completely controlled the number of hours she worked for ARI or any other insurance company.

10. From the beginning of her relationship with ARI, Want was aware that her position was temporary and that ARI considered her to be an independent contractor. The Personnel Change Notice signed by Want states that her employment is as a "contractor." . . . As indicated on the Change Notice, Want's job title was "Contract Claims Adjuster" and under the comments it clearly states, "Contractor for temporary position. Compensation @ $18/hr. Contract may be terminated by either party. Will receive a 1099 from [ARI] for Compensation in 2008." Want performed services for ARI for less than three months.

Although not specifically disputing the above statements, in her affidavit submitted in support of her opposition to the motion for summary judgment, Want stated that she was required to sign and comply with a confidentiality agreement; that she was required to comply with an employee code of conduct and was subject to discipline; that she was expected to be at work from 9:00 a.m. until 6:00 p.m., at a minimum, and was required to sign in and out on time sheets provided by ARI; that, because of the number of hours she worked and because of the confidentiality agreement, she was not effectively permitted to work for another insurance company while working for ARI; and that she was

so closely supervised by ARI that she exercised very little, if any, independent skill and initiative in performing her job.

"The determination of whether an individual is an employee or independent contractor is highly dependent on the particular situation presented." *Thibault*, 612 F.3d at 848. The particular circumstances of Want's brief relationship with ARI following Hurricane Ike, considered in their entirety, do not reflect, as a matter of economic reality, the degree of economic dependence on ARI that constitutes employee status. Want's resume, submitted by ARI in support of its motion for summary judgment, reflects that Want had worked as an independent contract adjuster for multiple companies prior to working for ARI for twelve weeks. Want was a licensed professional, and she, not ARI, bore the cost of licensing. She was expected to handle the files assigned to her with little or no day-to-day supervision. Want argues that the confidentiality agreement that she was required to sign as a condition of working for ARI, and the number of hours that she worked for ARI, precluded her from working for other insurance companies. However, she does not dispute that she, and not ARI, ultimately controlled the number of hours she worked for ARI. Further, there is nothing in the confidentiality agreement that would have precluded her from working for other insurance companies so long as she did not violate the terms of the agreement. Finally, it is undisputed that, from the beginning of her relationship with ARI, Want was aware that her position was expressly temporary.

Taking into account all of the summary judgment evidence, we conclude that the district court did not err in holding that, as a matter of law, Want was an independent contractor, and not an employee of ARI.

### III.

For the foregoing reasons, the summary judgment is

AFFIRMED.

13