**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 99-50112

ACOUSTIC SYSTEMS INC,

Plaintiff - Appellee,

VERSUS

WENGER CORPORATION; STEVE BRIGHT,

Defendants - Appellants.

Appeal from the United States District Court
for the Western District of Texas

April 3, 2000

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Acoustic Systems, Inc. ("Acoustic") brought this antitrust suit, 15 U.S.C. § 1, et seq., against the defendants, Wenger Corporation and its employee Steve Bright (collectively "Wenger") in district court. Wenger moved unsuccessfully for summary judgment upon both the state action and the Noerr-Pennington doctrines and appealed. We dismiss the appeal for lack of appellate jurisdiction. The denial of a summary judgment motion based upon the Noerr-Pennington doctrine is not a collateral order within this court's appellate jurisdiction. The denial of a summary judgment motion premised upon the state action doctrine asserted by a private defendant is not a collateral order within this court's appellate jurisdiction.

1

## I. FACTS and PROCEDURAL HISTORY

Wenger and Acoustic competitively manufacture and sell modular music practice rooms to schools, universities, and other entities. Wenger at one time was the sole manufacturer of modular music practice rooms. Acoustic is a relative newcomer to the market.

Acoustic alleges that Wenger has endeavored to protect its 90 percent share of the modular music practice room market by engaging in anticompetitive conduct. Acoustic alleges that Wenger's near monopoly enables it to persuade architects and builders to use specifications calling for the unique features of Wenger modular practice rooms. Thus, the specification process is an extensive barrier to Acoustic's entry into the market. Acoustic also alleges that Wenger interferes with Acoustic's existing and prospective contractual relations by false disparagement of Acoustic's products and false representations that Acoustic has infringed upon a Wenger patent. Wenger allegedly focuses its anticompetitive conduct upon public and private universities and public school districts, as well as at private architects and general contractors in charge of public school construction projects.

Acoustic filed suit in May 1997 alleging that Wenger had engaged in unfair and anticompetitive business practices against Acoustic including monopolization, predatory pricing and price discrimination, per se tying and restraint of trade, use of fraudulent patent, patent misuse, tortious interference with contract, commercial defamation, and false description and unfair

competition.[1]

Pursuant to a Wenger motion to dismiss, the district court dismissed two patent related claims (Counts IV and V), and they form no part of this appeal. In August 1998 Wenger moved for summary judgment dismissal of all 16 claims then pending: five relating to antitrust under the Sherman and Clayton Acts, one for false patent marking, one for violation of Texas public procurement laws (Texas Education Code § 44.031 et seq.), and nine for business torts.

The district court granted summary judgment in favor of Wenger dismissing the state procurement law claim but denied Wenger's summary judgment motion as to the remaining 15 claims. On January 19, 1999, Wenger timely appealed from the partial denial of summary judgment asserting the collateral order exception to the final judgment rule on grounds that the summary judgment motion was based on the state action and Noerr-Pennington doctrines. Acoustic

---

[1]Acoustic's amended complaint contained the following counts of anticompetitive conduct and business torts: Count I (attempted monopolization, 15 U.S.C. § 2 (Sherman Act)); Count II (predatory pricing and price discrimination, 15 U.S.C. §§ 22(A) & 13(A) (Clayton Act)); Count III (per se tying and restraint of trade, 15 U.S.C. § 1 (Sherman Act)); Count IV (declaratory judgment of patent invalidity); Count V (patent misuse); Count VI (false patent marking, 35 U.S.C. § 292); Count VII (attempted monopolization -- Walker Process antitrust, 15 U.S.C. § 2 (Sherman Act)); Count VIII (attempted monopolization -- Kobe antitrust, 15 U.S.C. § 2 (Sherman Act)); Count IX (tortious interference with contractual relations); Count X (tortious interference with prospective business relations); Count XI (commercial defamation); Count XII (per se trade slander and libel); Count XIII (false description and unfair competition, 15 U.S.C. § 1125); Count XIV (violation of Texas Public School Contract Statute); Count XV (common law unfair competition); Count XVI (injury to business reputation, Tex. Bus. & Com. Code § 16.29); Count XVII (unfair practices, Tex. Bus. & Com. Code § 15.05); and Count XVIII (conspiracy).

3

contends that we lack appellate jurisdiction to consider this appeal because, in the context of this case involving a private defendant, neither the state action doctrine nor the Noerr-Pennington doctrine operates to confer immediate appealability on the interlocutory order issued by the district court.

II. ANALYSIS

Before proceeding further, we must determine whether we have appellate jurisdiction. See Simmons v. Willcox, 911 F.2d 1077, 1080 (5th Cir. 1990) (citing Mosley v. Cozby, 813 F.2d 659, 660 (5th Cir. 1987)). As the appellant, Wenger bears the burden of establishing this court's appellate jurisdiction over its appeal. Prewitt v. City of Greenville, 161 F.3d 296, 298 (5th Cir. 1998)(citing Gonzales v. Texas Employment Comm'n, 563 F.2d 776, 777 (5th Cir. 1977)).

Title 28 U.S.C. § 1291 provides for appeal from "final decisions of the district courts." Under that provision, an appeal may not be taken "'from any decision which is tentative, informal, or incomplete,' as well as from any 'fully consummated decisions, where they are but steps towards final judgment in which they will merge.'" Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-43 (1993)(quoting Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546 (1949)). Because the denial of a summary judgment motion is not a final decision of the district court, the order presently under review by this court is interlocutory. See In re Corrugated Container Antitrust Litigation, 694 F.2d 1041, 1042 (5th Cir. 1983); 10A Charles Alan

4

Wright et al., Federal Practice and Procedure § 2715 (3rd ed. 1998). Under the collateral order doctrine, however, an interlocutory district court decision is immediately appealable as a final decision under § 1291 if it (1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468-69 (1978). If the order at issue fails to satisfy any one of these requirements, it is not an appealable collateral order. See Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 276 (1988).

Wenger asserts that an order denying a summary judgment motion premised upon either the state action or the Noerr-Pennington doctrine is immediately appealable under the collateral order doctrine. We conclude, however, that, while both doctrines afford a defense to liability, the state action doctrine does not provide an immunity to suit to a private party, and the Noerr-Pennington doctrine does not provide anyone a right not to stand trial. Consequently, the district court's denial of Wenger's motion for summary judgment is not an appealable collateral order.[2]

---

[2]Because we conclude that the district court's order denying summary judgment is not an immediately appealable collateral order, it is neither necessary nor appropriate to decide whether exclusive appellate jurisdiction would otherwise lie in the Federal Circuit under 28 U.S.C. § 1295 due to Acoustic's Walker Process, Kobe antitrust, and false patent marking claims. See Scherbatskoy v. Halliburton Co., 125 F.3d 288, 290-91 (5th Cir. 1997)(under § 1295 the Federal Circuit has exclusive jurisdiction to review a district court's final decision if that court's jurisdiction was based in whole or in part on 28 U.S.C. 1338(a), i.e., where the complaint includes allegations that federal patent law creates the cause of

1. State Action Doctrine

In <u>Martin v. Memorial Hospital at Gulfport</u>, 86 F.3d 1391 (5th Cir. 1996), this court recognized that an appeal by a municipal-state subdivision hospital on the issue of whether it acted pursuant to a clearly articulated and affirmatively expressed policy can be taken immediately under the collateral order doctrine.  <u>See</u> 86 F.3d at 1394; <u>see</u> <u>also</u> <u>TEC Cogeneration Inc. v. Florida Power & Light Co.</u>, 76 F.3d 1560, 1564 n.1 (11th Cir.), <u>modified</u>, 86 F.3d 1028 (11th Cir. 1996)(denial of a motion for summary judgment brought by a public utility under the state action immunity doctrine is immediately appealable under the collateral order doctrine); <u>Askew v. DCH Regional Health Care Authority</u>, 995 F.2d 1033, 1036 (11th Cir.), <u>cert. denied</u>, 510 U.S. 1012 (1993) (same result where defendant moving for summary judgment is a public hospital); <u>Commuter Transp. Systems, Inc. v. Hillsborough County Aviation Authority</u>, 801 F.2d 1286, 1289 (11th Cir. 1986)(same result where defendant is public airport authority); <u>but</u> <u>see</u> <u>Huron Valley Hospital, Inc. v. City of Pontiac</u>, 792 F.2d 563, 567-68 (6th Cir.), <u>cert. denied</u>, 479 U.S. 885 (1986) (denial of state action antitrust exemption to state officials is not an appealable

_____

action or federal patent law is a necessary element of the claim); <u>Natec, Inc. v. Deter Co.</u>, 28 F.3d 28 (5th Cir. 1994)(same).  In <u>Scherbatskoy</u> and <u>Natec, Inc.</u>, we transferred to the Federal Circuit appeals from such final decisions after concluding that the district courts had exercised subject matter jurisdiction under § 1338(a).  <u>See</u> 125 F.3d at 291; 28 F.3d at 29.  In the instant case, however, there is neither a final decision nor an immediately appealable collateral order.  Thus we do not enjoy even the preliminary jurisdiction to determine whether the district court operated under its grant of jurisdiction in § 1338(a), and, therefore, we do not pass upon the applicability of § 1295.

collateral order because state action questions did not reflect an entitlement to avoid the burdens of trial, could be preserved for review on appeal from a final judgment, and were bound up with the merits).

In Martin, a nephrologist brought an antitrust action against a public hospital, owned and operated by a municipality and a state subdivision hospital district, and against the hospital's board of trustees to enjoin the enforcement of the hospital's contract with the medical supervisor of its End Stage Renal Disease facility. See 86 F.3d at 1392-93. We concluded that the public hospital's state action immunity claim entailed a right not to bear the burden of the suit such that, regardless of the outcome, denial of the right would be effectively unreviewable after trial. See id. at 1396. We also concluded that the interlocutory order in Martin satisfied the remaining two criteria of the collateral order doctrine: it conclusively determined the disputed question and that question involved a claim of right separable from, and collateral to, rights asserted in the action. See id. at 1396-97. The express holding of Martin limited extension of the collateral order doctrine to the denial of a claim of state action immunity "to the extent that it turns on whether a **municipality** or **subdivision** acted pursuant to a clearly articulated and affirmatively expressed state policy." Id. at 1397 (emphasis added).

Wenger argues that a private party seeking immunity from antitrust suit and liability under the state action doctrine should also be permitted to appeal immediately from a denial of summary

7

judgment on these issues within the collateral order exception. Wenger has not cited, and we are not aware of, any decision to this effect.

In determining whether to expand the collateral order exception to include the present case, we are mindful of the Supreme Court's admonition that it is but "a narrow class of collateral orders which do not meet this [traditional] definition of finality, but which are nevertheless immediately appealable under § 1291 . . . ." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996). Moreover, the Supreme Court has repeatedly stressed that the "narrow" exception should stay that way and never be allowed to swallow § 1291's general rule of finality. See Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868 (1994). Indeed, this court has stated that "the collateral order doctrine is not to be applied liberally. Rather, the doctrine is extraordinarily limited in its application." Ozee v. American Council on Gift Annuities, Inc., 110 F.3d 1082, 1091 (5th Cir.), vacated on other grounds, 522 U.S. 1011 (1997); see also In re Corrugated Container Antitrust Litigation, 694 F.2d at 1042-43 (citing and quoting North American Acceptance Corp. Securities Cases v. Arnall, Golden & Gregory, 593 F.2d 642, 645 (5th Cir.), cert. denied, 444 U.S. 956 (1979) ("This Court has repeatedly stressed the extraordinarily limited nature of the 'collateral order' doctrine: 'Because of the problems of piecemeal review, and because courts are burdened beyond measure, we must be parsimonious in our analysis of appealability. . . . It should simply be a

8

strict application of <u>Cohen</u>. In the great majority of cases <u>Cohen</u> will lead the court to correctly conclude that an interlocutory order is not directly appealable.'")).

"[W]hen we assess whether interlocutory review is appropriate, '[t]he critical question . . . is whether the essence of the claimed right is a right not to stand trial.'" <u>Shanks v. AlliedSignal, Inc.</u>, 169 F.3d 988, 991-92 (5th Cir. 1999)(citing and quoting <u>Van Cauwenberghe v. Biard</u>, 486 U.S. 517, 524 (1988)). The Supreme Court has "acknowledged that virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a right not to stand trial." <u>Digital Equip. Corp.</u>, 511 U.S. at 873. Therefore, "[section] 1291 requires courts of appeals to view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." <u>Id</u>.

Applying the foregoing precepts, we conclude that the state action doctrine does not immunize private defendants from suit and that the collateral order doctrine does not confer appellate jurisdiction over this appeal. The state action doctrine was first espoused by the Supreme Court in <u>Parker v. Brown</u>, 317 U.S. 341 (1943), as an immunity for state regulatory programs from antitrust claims.[3] In <u>Parker</u>, the Court considered the legal effect of the

---

[3]Though the state action doctrine is often labeled an immunity, that term is actually a misnomer because the doctrine is but a recognition of the limited reach of the Sherman Act which does "not undertak[e] to prohibit a sovereign state from imposing an anticompetitive restraint as an act of government." <u>Martin</u>, 86 F.3d at 1395 (citing <u>Parker v. Brown</u>, 317 U.S. 341, 352 (1942)); <u>see</u> <u>also</u> <u>Surgical Care Center of Hammond, L.C. v. Hospital Serv. Dist. No. 1 Of Tangipahoa Parish</u>, 171 F.3d 231, 234 (5th Cir. 1999)(en banc)("'Parker immunity' is more accurately a strict

9

California Agricultural Prorate Act which authorized state officials to issue regulations restricting competition among raisin producers and setting prices in distribution to packers. See 317 U.S. at 346. The marketing program implemented under the Act seriously restricted the freedom of raisin producers to sell their crops in interstate commerce, and the program was challenged under the Sherman Act. See id. at 350. The Supreme Court found "nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." Id. at 350-51. The Court concluded that under our federal system of government and out of concerns for state sovereignty, state regulatory programs cannot violate "[t]he Sherman Act [because the Act] makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by a state." Id. at 351.

"In subsequent cases, the Court extended the state action doctrine to cover, under certain circumstances, acts by private parties that stem from state power or authority." Martin, 86 F.3d at 1397 (citing California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97 (1980)). To ensure that private parties could claim state action immunity from antitrust liability only when their anticompetitive acts were truly the product of state regulation, the Supreme Court established a rigorous two-

standard for locating the reach of the Sherman Act than the judicial creation of a defense to liability for its violation.").

10

pronged test to determine whether the private party conduct should be deemed state action and thus shielded from the antitrust laws: "[f]irst, the challenged restraint must be one clearly articulated and affirmatively expressed as state policy[; and s]econd, the anticompetitive conduct must be actively supervised by the state itself." Patrick v. Burget, 486 U.S. 94, 100, reh'g denied, 487 U.S. 1243 (1988) (citing and quoting Midcal Aluminum, 445 U.S. at 105)(in turn quoting City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 410 (1978)(internal quotation marks omitted)).

On the other hand, municipalities and other political subdivisions, while they are not automatically immune under Parker because they are not sovereign, see Town of Hallie v. City of Eau Claire, 471 U.S. 34, 38 (1985), are entitled to immunity when they act pursuant to a clearly articulated and affirmatively expressed state policy displacing competition. See id. at 45-46. Municipalities and other political subdivisions are not required to meet the second Midcal prong of active state supervision applicable to private parties seeking the shelter of state action immunity. See id. at 46-47.

In Martin, we concluded that the state action doctrine offered the public hospital defendant an immunity from suit after comparing it to claims by public officials to absolute and qualified immunity and to claims by states to Eleventh Amendment immunity. See Martin, 86 F.3d at 1395 (citing Nixon v. Fitzgerald, 457 U.S. 731 (1982)(absolute immunity); Mitchell v. Forsyth, 472 U.S. 511 (1985)(qualified immunity); and Puerto Rico Aqueduct and Sewer

11

Authority v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993)(Eleventh Amendment immunity)).  Common to Nixon, Mitchell, and Puerto Rico Aqueduct were concerns that public defendants would be subjected to the costs and general consequences associated with discovery and trial.  Specifically, those concerns included (1) the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties; (2) the adverse impact on the public interest that would result when governmental officials fail to perform their duties with independence and without fear of consequences unless clearly established rights are implicated; and (3) the general costs of subjecting officials to the risks of trial, such as distraction from governmental duties, inhibition of discretionary action, deterrence of able people from qualified service, and the disruptive impact upon government posed by such pretrial matters as discovery.  See id. at 1395-96.  Because of these concerns, the Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), refashioned the qualified immunity doctrine "to permit the resolution of many insubstantial claims on summary judgment and to avoid subjecting government officials either to the costs of trial or to the burdens of broad-reaching discovery in cases where the legal norms the officials are alleged to have violated were not clearly established at the time.  The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is permitted to go to trial."  Id. at 1396 (citing Mitchell, 472 U.S. at 527).

Because state action immunity was premised upon the Parker

12

Court's finding that "nothing in the language of the Sherman Act or in its history [ ] suggests that its purpose was to restrain a **state** or its **officers** or **agents** from activities directed by its legislature," Parker, 317 U.S. at 350-51 (emphasis added), the defendant's status as a public entity in Martin gave rise to similar concerns. We therefore concluded that the reasoning that underlies the immediate appealability of an order denying absolute, qualified or Eleventh Amendment immunity indicates that the denial of state action immunity to a state, its officers, or its agents should be similarly appealable: in each case, the district court's decision that the public defendant must go to trial is effectively unreviewable on appeal from a final judgment. See Martin, 86 F.3d at 1396.

Wenger's status as a private defendant does not implicate these concerns. The Parker v. Brown state action doctrine, like the doctrine of qualified immunity, is "interpreted to create an immunity from suit and not just from judgment -- to spare state officials the burdens and uncertainties of the litigation itself as well as the cost of an adverse judgment." Segni v. Commercial Office of Spain, 816 F.2d 344, 346 (7th Cir. 1987) (citing Commuter Transp. Systems, Inc., 801 F.2d at 1289-90); see also 1 Phillip E. Areeda and Herbert Hovenkamp, Antitrust Law ¶ 222b (Revised ed. 1997) ("The importance of Parker's status as an immunity is particularly strong when the defendant is a government agency, subdivision, or government official carrying out duties. Such entities and officials cannot be intimidated from carrying out

13

their regulatory obligations by threats of costly litigation, even if they might ultimately win."). These concerns are not raised by a suit against a private party. Cf. Wyatt v. Cole, 504 U.S. 158, 167-68 (1992)(private defendants may not invoke qualified immunity when charged with 42. U.S.C. § 1983 liability for invoking state replevin, garnishment, or attachment statutes later determined to be unconstitutional); Rambo v. Daley, 68 F.3d 203, 206 (7th Cir. 1995), cert. denied, 517 U.S. 1157 (1996)("Mitchell permits interlocutory appeals only where the defendant is a public official asserting a defense of qualified immunity.") (citing Johnson, 515 U.S. at 311); Crippa v. Dukakis, 905 F.2d 553, 556 (1st Cir. 1990)(a qualified immunity claimant's right to interlocutory appeal is available only to government officials and conceivably their functional equivalent); Lovell v. One Bancorp, 878 F.2d 10, 13 (1st Cir. 1989)(private defendant may not immediately appeal the denial of a motion to dismiss asserting qualified immunity); Youghiogheny & Ohio Coal Co. v. Baker, 815 F.2d 422, 425 (6th Cir. 1987)(an entitlement not to be sued under Mitchell v. Forsyth is not available to private parties); Chicago & North Western Transp. Co. v. Ulery, 787 F.2d 1239, 1240-41 (8th Cir. 1986)(the denial of a private defendant's motion for summary judgment asserting qualified immunity in not an appealable collateral order).

Wenger's invocation of the state action doctrine, if meritorious, provides only a defense against liability. Accordingly, the denial of the summary judgment motion based on the state action doctrine is effectively reviewable after trial and is

14

not an immediately reviewable collateral order.  We therefore do not have appellate jurisdiction to review this aspect of the district court's order.

2. Noerr-Pennington Doctrine

We are no more persuaded by Wenger's contention that the district court's denial of its summary judgment asserting a defense based on the Noerr-Pennington doctrine should be immediately reviewable on appeal under the collateral order doctrine.  That defense against antitrust liability was established by the Supreme Court in the Noerr-Pennington cases, holding that, as a general rule, lobbying and other efforts to obtain legislative or executive action do not violate the antitrust laws, even when those efforts are intended to eliminate competition or otherwise restrain trade. See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, reh'g denied, 365 U.S. 875 (1961); United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965); see also 3 Julian O. von Kalinowski et al., Antitrust Laws and Trade Regulation § 50.01 (2nd ed. 1999).  The doctrine was subsequently extended to efforts to obtain judicial and quasi-judicial actions. See California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972).

The courts have based the Noerr-Pennington protection for petitioning governmental entities on the First Amendment right of citizens to petition the government and to participate in the legitimate processes of government.  See, e.g., Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983)("[T]he right of

15

access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."); City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 399 (1978)(two correlative principles led the Noerr Court to hold that one's concerted efforts to influence lawmakers to enact legislation beneficial to himself or detrimental to his competitors was not within the scope of the antitrust laws: "The first is that a contrary construction would impede open communication between the polity and the lawmakers which is vital to the functioning of a representative democracy. Second, 'and of at least equal significance' is the threat to the constitutionally protected right of petition which a contrary construction would entail.") (quoting Noerr Motor Freight, Inc., 365 U.S. at 137-38); Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 707 (1962)("imputing to the Sherman Act a purpose to regulate political activity . . . would have encountered serious constitutional barriers"); Barton's Disposal Serv., Inc. v. Tiger Corp., 886 F.2d 1430, 1435-36 (5th Cir. 1989)("The . . . doctrine recognizes that, under the First Amendment, business entities have the right to advocate policies to federal, state and local government bodies that may destroy competitors."); see also von Kalinowski, supra.

Correspondingly, the Noerr-Pennington doctrine also reflects the view that Congress did not intend the Sherman Act to reach governmental action or the political process. See Noerr Motor Freight Inc., 365 U.S. at 139 ("A construction of the Sherman Act that could disqualify people from taking a public position on

matters in which they are financially interested would thus deprive the government of a valuable source of information and . . . deprive the people of their right to petition in the very instances in which that right may be of the most importance to them."); City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 380 (1991)(the Noerr-Pennington "doctrine, like Parker, rests ultimately upon a recognition that the antitrust laws, 'tailored as they are for the business world, are not at all appropriate for application in the political arena.'")(quoting Noerr Motor Freight, Inc., 365 U.S. at 141); Coastal States Mktg., Inc. v. Hunt, 694 F.2d 1358, 1363-64 and n.16 (5th Cir.1983)(the Sherman Act does not reach conduct designed to foster the adoption of legislation injurious to competitors).

Although the Noerr-Pennington doctrine is frequently referred to as an "antitrust immunity," it provides only a defense to liability, not an immunity from suit. See We, Inc. v. City of Philadelphia, 174 F.3d 322, 326 (3d Cir. 1999); accord Segni v. Commercial Office of Spain, 816 F.2d 344, 345-46 (7th Cir. 1987).

First, the Supreme Court in McDonald v. Smith, 472 U.S. 479, 485 (1985), held that the Petition Clause of the First Amendment does not provide absolute immunity to a defendant charged with expressing libelous and damaging falsehoods in petitions to government officials. The Court observed that the right to petition "is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of

17

expression," but that it does not follow that the Framers of the First Amendment believed that the Petition Clause provided absolute immunity from damages for libel.  McDonald, 472 U.S. at 482-83 (citing Unites States v. Cruikshank, 92 U.S. 542, 552 (1876) and James Madison in congressional debates, 1 Annals of Cong. 738 (1789)).  The Court noted that in White v. Nicholls, 44 U.S. 266, 291 (1845), after reviewing the common law, it had concluded that the plaintiff could bring a libel action based on letters written by the defendant urging the President to remove the plaintiff from office as a customs inspector, if the defendant's petition was prompted by falsehood and the absence of probable cause.  See McDonald, 472 U.S. at 484.  The Court also stated that its decisions interpreting the Petition Clause in other contexts indicated that the right to petition does not include absolute immunity.  See id. (citing Bill Johnson's Restaurants, Inc., 461 U.S. at 743 (filing a complaint in court is a form of petitioning activity, but "baseless litigation is not immunized by the First Amendment right to petition"); Garrison v. Louisiana, 379 U.S. 64, 75 (1964)("petitions to the President that contain intentional and reckless falsehoods 'do not enjoy constitutional protection'")).  Thus, the McDonald Court concluded, "there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions."  Id. at 485.  After the Supreme Court's rejection of the notion that the protection conferred by the petition clause is absolute, "no possible ground remains for thinking that a defense based on that

18

clause is any different -- so far as is relevant to the issue of appealability under the collateral order doctrine -- from any other affirmative defense." Segni, 816 F.2d at 346; accord We, Inc., 174 F.3d at 328-29.

Second, the courts which have recognized that the denial of a defense based on the state action doctrine of Parker v. Brown, 317 U.S. 341 (1943), may be immediately appealable by the state, its officers, or its agents as a collateral order, have been careful "to point out that the doctrine had been interpreted to create an immunity from suit and not just from judgment -- to spare state officials the burdens and uncertainties of the litigation itself as well as the cost of an adverse judgment." Segni, 816 F.2d at 346 (citing Commuter Transp. Systems, Inc., 801 F.2d at 1289-90 (state action doctrine); Freeman v. Kohl & Vick Mach. Works, Inc., 673 F.2d 196 (7th Cir. 1982)(conflict of laws determination embodied in order denying summary judgment); Chicago & North Western Transp. Co. v. Ulery, 787 F.2d 1239 (8th Cir. 1986)(denial of qualified immunity for private defendant in 42 U.S.C. § 1983 civil rights case)). The possibility that the burdens of suit might deter public officials from vigorous execution of their offices is a consideration missing in the case of Noerr-Pennington's protection of private defendants from antitrust liability. See We, Inc., 174 F.3d at 329.

Accordingly, we find the reasoning of the Third and Seventh Circuits convincing and conclude that, because the Noerr-Pennington doctrine provides only an affirmative defense against liability,

19

not a right not to stand trial, a district court judgment denying summary judgment asserting the <u>Noerr-Pennington</u> defense is not an appealable collateral order.

III. CONCLUSION

For lack of appellate jurisdiction, we dismiss Wenger's appeal from the district court's order denying summary judgment.