## LAMAR COUNTY ELECTRIC COOPERATIVE ASSOCIATION

v.

## RAYBURN COUNTRY ELECTRIC COOPERATIVE, INC.

### No. CIV.A.MO–01–CA–124.

United States District Court,
E.D. Louisiana,
Midland–Odessa Division.

June 17, 2002.

## *ORDER AND REASONS*

VANCE, District Judge.

Before the Court is defendant's motion to dismiss. For the following reasons, the Court grants the motion.

### I. Background

This case arises out of Rayburn Country Electric Cooperative, Inc.'s enforcement of a 1996 settlement agreement to prevent a merger of plaintiff and another company. Rayburn is a "generation and transmission" cooperative that is made up of a group of other electrical cooperatives. It buys electricity and then sells the electricity to members of the cooperative, who in turn sell the electricity to their retail customers.

In 1996, Rayburn entered into a settlement agreement with Cap Rock Electric Cooperative, Inc. and Hill–Collin Electric Cooperative, Inc., a former member of the Rayburn cooperative, to settle a dispute among them stemming from Cap Rock's acquisition of Hill–Collin. The 1996 agreement replaced a 1988 agreement between Rayburn and Hill–Collin regarding the termination of the parties' wholesale power contract. In the 1996 agreement, Cap Rock agreed to terminate all dealings with Rayburn. Specifically, Cap Rock renounced any interest in energy from Denison Dam and any claim to membership in Rayburn or to representation on the board of Rayburn. The agreement bound the parties and their present and future affiliates and divisions.

Cap Rock then entered into an agreement to combine with plaintiff Lamar Electric Cooperative Association. Lamar is a member of the Rayburn cooperative, and under the merger agreement, Lamar would become a division of Cap Rock. Cap Rock was to acquire Lamar's assets, including its wholesale power supply contract with Rayburn. The agreement acknowledged that it might be necessary to obtain Rayburn's approval of the merger, as Rayburn is Lamar's wholesale power supplier. When Rayburn raised objections to the merger, Lamar filed suit in Lamar County state court seeking a declaration of its rights. Rayburn filed its own state court suit to block the Cap Rock–Lamar merger, alleging that the Cap Rock–Lamar transaction would violate the terms of the 1996 settlement agreement. Rayburn sued in Midland County and obtained a summary judgment on its claims that (1) the proposed Cap Rock/Lamar combination would violate the terms of the 1996 settlement agreement, (2) Cap Rock anticipatorily breached the 1996 settlement agreement, and (3) that Cap Rock was required to specifically perform its obligations under the 1996 settlement agreement. Lamar opposed Rayburn's summary judgment motion and argued, among other things, that the settlement agreement violated Texas antitrust law. The Texas court entered a final judgment in favor of Rayburn finding the settlement agreement to be valid and ordering its specific performance. The court also entered a permanent injunction precluding the Cap Rock–Lamar merger. The court specifically found that the merger would violate the settlement agreement.[1]

---

1. References to documents are to public records in state court proceedings, of which Rayburn invited the Court to take judicial notice. *See* FED. R. EVID. 201(d) ("A court shall take judicial notice if requested by a party and supplied with the necessary information."); *see also Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017–18 (5th Cir.1996) ("Nor-

mally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. However, courts may also consider matters of which they may take judicial notice.").

Lamar filed this complaint against Rayburn under the Sherman Antitrust Act, 15 U.S.C. § 1, and the Texas Antitrust Act, V.T.C.A., Bus. & C. § 15.05, *et seq.* Lamar contends that Rayburn's efforts to interpret and enforce the 1996 settlement agreement violate both federal and state antitrust laws. Lamar further alleges that Rayburn breached fiduciary duties it owed to Lamar as a member of the Rayburn cooperative. Rayburn seeks to dismiss the lawsuit under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. Discussion

### A. Legal Standard

In a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *See Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996); *American Waste & Pollution Control Co. v. Browning–Ferris, Inc.,* 949 F.2d 1384, 1386 (5th Cir. 1991). Dismissal is warranted if it appears certain that the plaintiff cannot prove any set of facts in support of its claim that would entitle it to relief. *Piotrowski v. City of Houston,* 51 F.3d 512, 514 (5th Cir.1995) (quoting *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 524 (5th Cir.1994)).

### B. Noerr–Pennington

■ The *Noerr–Pennington* doctrine confers immunity to private individuals seeking anticompetitive action from the government. *Bayou Fleet, Inc. v. Alexander,* 234 F.3d 852, 859 (5th Cir.2000) (*citing Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)); *Acoustic Systems, Inc. v. Wenger Corpora-*

*tion,* 207 F.3d 287, 296 (5th Cir.2000). The doctrine stems from the First Amendment right of citizens to petition the government and to participate in the legitimate processes of government. *See Acoustic Systems,* 207 F.3d at 294–95 (citing cases). *Noerr–Pennington* immunity covers efforts to obtain judicial and quasi-judicial actions. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972); *see also Acoustic Systems,* 207 F.3d at 294. It applies regardless of whether the sole purpose of the activity is to drive competitors out of business. *Bayou Fleet,* 234 F.3d at 861 (*citing Pennington,* 381 U.S. at 670, 85 S.Ct. at 1593).

■ Here, Rayburn argues that Lamar's suit must be dismissed because its effort to enforce the 1996 settlement agreement is protected by the *Noerr–Pennington* doctrine. In seeking relief, Lamar's complaint refers exclusively to Rayburn's efforts to "interpret and enforce the settlement agreement" and to the position it took in the state court litigation. *See* Pl.'s Cmplt. at ¶¶ 9, 10, 11–16, 18. Although Lamar now attempts to recharacterize its claims, it is clear from its recitation of the facts in its brief that the conduct it complains of is Rayburn's effort to obtain the state court judgment. In essence, Lamar complains that it wanted to merge with Cap Rock, and Rayburn prevented it from doing so by obtaining the state court judgment. Outside of that course of conduct, Lamar does not point to any conduct by Rayburn that caused it harm. Indeed, it recites in paragraph five of its complaint that it currently has a management contract with Cap Rock, which Rayburn apparently has not disturbed. The gravamen of plaintiff's complaint is thus that Rayburn succeeded in persuading the state court to accept Rayburn's interpretation of the 1996 settlement agreement.[2] The Court therefore

2. Further, although Lamar refers to the state-     ments of a Rayburn representative as to how

finds that the *Noerr–Pennington* doctrine provides Rayburn with an affirmative defense to Lamar's claims that its enforcement of the 1996 settlement agreement violated the antitrust laws.

The Court acknowledges that there is an exception to the *Noerr–Pennington* doctrine for "sham" litigation. *See Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 380, 111 S.Ct. 1344, 1354, 113 L.Ed.2d 382 (1991). The "sham" exception involves efforts to influence public officials for the sole purpose of imposing expense or delay on a competitor. *Omni Outdoor Advertising,* 499 U.S. at 380, 111 S.Ct. at 1354. "The exception applies to defendants who use the process as an anticompetitive weapon, rather than those who genuinely seek to achieve an intended result." *Bayou Fleet,* 234 F.3d at 861–62 (citation omitted). The Supreme Court has stated that "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Professional Real Estate Investors, Inc. v. Columbia Pictures, Inc.,* 508 U.S. 49, 61 n. 5, 113 S.Ct. 1920, 1928 n. 5, 123 L.Ed.2d 611, —— n. 5113 (1993); *see Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 502, 108 S.Ct. 1931, 1938, 100 L.Ed.2d 497 (1988) (a successful "effort to influence governmental action . . . certainly cannot be characterized as a sham."). Under the Supreme Court's decision in *Professional Real Estate Investors,* an objectively reasonable effort to litigate cannot be a sham regardless of subjective intent. *See* 508 U.S. at 56, 113 S.Ct. at 1926. The Court's "sham" definition provides that two elements must be present for the exception to apply. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could re-

alistically expect success on the merits." *Id.* at 60, 113 S.Ct. at 1928. If the challenged litigation is objectively baseless, then, and only then, may the court consider whether "the baseless lawsuit conceals an attempt to interfere directly with the business relationship of a competitor, through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Id.* (internal quotations and citations omitted). The *Professional Real Estate* test requires the plaintiff to disprove the challenged lawsuit's legal validity before the court will entertain evidence of the suit's economic viability. *Id.* at 61, 113 S.Ct. at 1928.

Lamar does not even allege that Rayburn's state court litigation was a sham. In addition, Rayburn's lawsuit was successful, and therefore it cannot be characterized as sham. *See Professional Real Estate Investors,* 508 U.S. at 61 n. 5, 113 S.Ct. at 1928 n. 5; *Allied Tube & Conduit Corp.,* 486 U.S. at 502, 108 S.Ct. at 1938. Lamar's argument that Rayburn's interpretation of the 1996 settlement agreement is anticompetitive may illuminate Rayburn's intent in filing its lawsuit, but it will not carry the day in the face of Rayburn's successful state court petition. *See id.* at 59, 113 S.Ct. at 1927. Finally, although this Court may disagree with the state court's sweeping interpretation of the settlement agreement, the validity of the state court's judgment is a matter for the state appellate courts. Accordingly, the Court finds that Lamar fails to state a claim under the Sherman Act for which relief may be granted because Rayburn's conduct was shielded by *Noerr–Pennington* immunity.

he would interpret the settlement agreement, these statements were made in the litigation in response to deposition questions. Lamar does not allege that this person took any

action besides answering questions in the legal proceeding in which Rayburn pursued its claims.

## C. State Law Claims

 Lamar also alleges that Rayburn violated the Texas Antitrust Act and breached its alleged fiduciary duty. The district court may decline to exercise supplemental jurisdiction over a claim in an action brought under federal question jurisdiction if the court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). The general rule is that state claims should be dismissed once the court dismissed the federal claims that were the basis for federal jurisdiction. *See Parker & Parsley Petroleum v. Dresser Ind.*, 972 F.2d 580, 585 (5th Cir.1992). Courts should consider the following factors to determine whether to retain jurisdiction once the federal claims have been dismissed: judicial economy, convenience, fairness, federalism, and comity. *See id.; Newport Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302, 307 (5th Cir.1991), *cert. denied*, 502 U.S. 1096, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992).

 At this stage in the proceedings, nine months since Lamar filed its amended complaint, this Court has no substantial familiarity with this case beyond this motion to dismiss. *See Parker & Parsley Petroleum*, 972 F.2d at 587–88 (reversing district court's failure to dismiss state claims when case was pending for nine months and was only a few weeks from trial). Furthermore, dismissal will not cause undue inconvenience to the litigants because any discovery that has been conducted may be used in a state proceeding. *See id.* Finally, the interests of federalism and comity point strongly towards dismissal. While the state antitrust claim is similar to the federal antitrust claim, the Court perceives a potential, threshold issue of res judicata or collateral estoppel under Texas law, since the state antitrust law issue has already been litigated in the Texas trial court. Texas courts are more familiar with the legal effect of their judgments than are federal courts. The Court also finds that Texas courts are better suited to address the state law breach of fiduciary duty claim. In light of the foregoing considerations, the Court declines to exercise jurisdiction over the pendant state law claims.

## III. Conclusion

For the foregoing reasons, the Court GRANTS Rayburn's motion to dismiss Lamar's federal antitrust claims. Lamar's state law claims are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.