# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2020

Lyle W. Cayce
Clerk

No. 19-30796

Louisiana Real Estate Appraisers Board,

*Plaintiff—Appellee*,

*versus*

United States Federal Trade Commission,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Middle District of Louisiana
3:19-CV-214

Before Jones, Elrod, and Higginson, *Circuit Judges*.
Edith H. Jones, *Circuit Judge*:

This is an appeal of a district court order staying administrative proceedings that were initiated by appellant the Federal Trade Commission[1] against appellee the Louisiana Real Estate Appraisers Board (the "Board") pursuant to the Federal Trade Commission Act. Because the district court

---

[1] We refer to the FTC acting in its role as complaint counsel as the "FTC" and the FTC acting in its adjudicatory capacity as the "Commission."

lacked jurisdiction, we vacate its stay order and remand with instructions to dismiss.

## I. BACKGROUND

The Board is a state agency tasked with licensing and regulating commercial and residential real estate appraisers and management companies in Louisiana. La. Stat. Ann. §§ 37:3395; 37:3415.21. Each of the Board's ten members is appointed by the Governor and confirmed by the state senate, and members are removable by the Governor for cause. *Id.* § 37:3394. Of the ten members, eight must be "licensed as certified real estate appraisers." *Id.* § 37:3394(B)(1)(c), (b).

In 2010, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act, which requires lenders to compensate fee appraisers "at a rate that is customary and reasonable for appraisal services performed in the market area of the property being appraised." 15 U.S.C. § 1639e(i)(1). In response, the Louisiana legislature amended its own law, the Appraisal Management Company Licensing and Regulation Act (the "AMC Act"), to require that appraisal rates be consistent with Section 1639e and its implementing regulations. *See* La. Stat. Ann. § 37:3415:15(A). The legislature also gave the Board the authority to "adopt any rules and regulations in accordance with the [Louisiana] Administrative Procedure Act necessary for the enforcement of [the AMC Act]." *Id.* § 37:3415.21.

Accordingly, the Board adopted Rule 31101, requiring that licensees "compensate fee appraisers at a rate that is customary and reasonable for appraisal services performed in the market area of the property being appraised and as prescribed by La. Stat. Ann. § 34:3415.15(A)." La. Admin. Code tit. 46 § 31101. Unlike the federal regulations, which instruct that appraisal fees are "presumptively" customary and reasonable if they meet certain market conditions, Rule 31101 prescribed its own methods by which

a licensed appraisal management company can establish that a rate is customary and reasonable. *Compare id.*, *with* 12 C.F.R. § 226.42(f)(2), (3).

In 2017, the FTC filed an administrative complaint against the Board, asserting the Board had engaged in "concerted action that unreasonably restrains trade" in violation of the FTC Act's prohibition on unfair methods of competition. The complaint alleged Rule 31101 "unlawfully restrains competition on its face by prohibiting [appraisal management companies] from arriving at an appraisal fee through the operation of the free market." The FTC also alleged that the Board's enforcement of Rule 31101 unlawfully restrained price competition. In response, the Board denied the FTC's allegations and argued that it was entitled to immunity from antitrust liability under the state action doctrine.

Following the FTC's initiation of proceedings against the Board, the Governor of Louisiana issued an executive order purporting to enhance state oversight of the Board. The Board also revised Rule 31101 in accordance with the Governor's executive order. Based on those changes, the Board moved to dismiss the FTC's complaint in the administrative proceedings, arguing that the executive order and revision of Rule 31101 mooted the FTC's claims. The same day, the FTC cross-moved for summary judgment on the Board's state action immunity defense. On April 10, 2018, the Commission denied the Board's motion and granted the FTC's, rejecting the Board's assertion of state action immunity.

The Commission has not issued a final cease and desist order, but the Board has twice challenged the April 10, 2018 order in federal court to claim immunity. First, in late April, the Board petitioned this court directly for review of the Commission's order. In a published opinion, this court dismissed the petition for lack of jurisdiction. *La. Real Estate Appraisers Bd. v. F.T.C.*, 917 F.3d 389, 393 (5th Cir. 2019) (*LREAB I*). Second, and relevant here, the day after this court denied the Board's petition for *en banc* rehearing, the Board sued the FTC in a federal district court, alleging the

Commission's April 10, 2018 order violated the Administrative Procedure Act.  The Board also moved to stay the ongoing Commission proceedings. The district court granted the Board's motion and stayed the Commission proceedings pending the resolution of the Board's APA claim.  On appeal, the FTC principally contends that the district court lacked jurisdiction.

## II. DISCUSSION

We review questions of jurisdiction *de novo*, with the "burden of establishing federal jurisdiction rest[ing] on the party seeking the federal forum." *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019).

The FTC contends the district court lacked jurisdiction over the Board's lawsuit because the FTC Act vests exclusive jurisdiction to review challenges to Commission proceedings in the courts of appeals. 15 U.S.C. § 45(d) ("Upon the filing of the record with it the jurisdiction of the court of appeals of the Unites States to affirm, enforce, modify, or set aside orders of the Commission shall be exclusive.").  The Board counters that the district court had jurisdiction pursuant to the APA's default review provision, 5 U.S.C. § 704, regardless of the FTC Act's judicial review scheme.  We agree with the FTC that the district court lacked jurisdiction but for a different reason:  Even if the FTC Act does not preclude Section 704 review—an issue we need not address—the Board fails to meet Section 704's jurisdictional prerequisites.[2]

Section 704 of the APA permits non-statutory judicial review of certain "final agency action."  5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other

---

[2] The Board also argues we lack jurisdiction over the merits of the FTC's appeal, but because the district court lacked jurisdiction, we do not address the merits.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 73, 117 S. Ct. 1055, 1072 (1997) (recognizing that when a district court "lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the [matter]").

adequate remedy in a court are subject to judicial review."). Absent a showing of finality, a district court lacks jurisdiction to review APA challenges to administrative proceedings. *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999). Here, the Board relies on the collateral order doctrine as an expansion of the finality requirement of Section 704. Because the April 10, 2018 order meets the doctrine's predicates, the Board contends, the order should be treated as final and subject to challenge under the APA. The FTC disagrees with this approach, and so do we.

The collateral order doctrine is a judicially created exception to the "final decision" requirement of 28 U.S.C. § 1291, which governs appellate jurisdiction over appeals of final district court decisions. *See Exxon Chemicals Am. v. Chao*, 298 F.3d 464, 469 (5th Cir. 2002). The doctrine provides that an interlocutory decision is immediately appealable "as a final decision under § 1291 if it (1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment." *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 290 (5th Cir. 2000). This court has recognized that "the requirement of 'final agency action' in [Section 704]" is analogous "to the final judgment requirement of 28 U.S.C. § 1291." *Am. Airlines*, 176 F.3d at 288; *see also LREAB I*, 917 F.3d at 392 ("[C]ourts have recognized that the [APA's] 'final agency action' requirement is analogous to § 1291's 'final decision' requirement.").[3] We assume arguendo that equating finality under Sections 1291 and 704 imports the collateral order

---

[3] Other circuits concur. *See, e.g.*, *Chehazeh v. Attorney Gen.*, 666 F.3d 118, 135 (3d Cir. 2012) ("A provision analogous to Section 704's 'final agency action' requirement is found in 28 U.S.C. § 1291, which permits appellate review only of 'final decisions' of a district court."); *DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212, 1220 (D.C. Cir. 1996) (Ginsburg, J., concurring) ("Our analysis of the finality requirement imposed by the APA is properly informed by our analysis of that requirement in § 1291.").

doctrine into the Section 704 analysis.[4] Nevertheless, the Board fails to show that the Commission's interlocutory denial of state action immunity in this case meets the doctrine's requirements. As to the first prong of the doctrine, there is no dispute that the Commission's rejection of state action immunity was "conclusive." Problems arise concerning the second prong, whether the issue of state action immunity is "completely separate from the merits" of the FTC's antitrust action, and the third prong, whether the decision is "effectively unreviewable on appeal."

The parties square off in differing interpretations of our case law that has applied the collateral order doctrine to denials of claims of state action immunity. To begin our analysis, however, the background of the substantive issues must be briefly recapitulated. "The state action doctrine was first espoused by the Supreme Court in *Parker v. Brown*, 317 U.S. 341, 63 S. Ct. 307 [] (1943) as an immunity for state regulatory programs from antitrust claims." *Acoustic Systems*, 207 F.3d at 292. In *Parker*, the Court considered whether a state statute that authorized state officials to issue regulations restricting certain agricultural competition violated antitrust law. 317 U.S. at 350–51, 63 S. Ct. at 313–14. The Court found "nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Id.* Accordingly, the Court concluded that state regulatory programs cannot violate the Sherman Act because the "Act makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by a state."[5] *Id.* at 351.

---

[4] Note that this is a significant theoretical stretch, as it (a) means the appeal to the district court of an interlocutory order under the APA, which normally requires "final" agency action, and (b) supersedes the FTC Act's direction of appeals to the courts of appeals.

[5] The state action analysis applies to FTC actions as well as to federal antitrust litigation. *See F.T.C. v. Ticor Title Ins. Co.*, 504 U.S. 621, 635, 112 S. Ct. 2169, 2177 (1992) (applying the state action analysis in a case arising only under the FTC Act). We also note

"In subsequent cases, the Court extended the state action doctrine to cover, under certain circumstances, acts by private parties that stem from state power or authority . . . as well as acts by political subdivisions, cities, and counties." *Martin v. Memorial Hosp. at Gulfport*, 86 F.3d 1391, 1397 (5th Cir. 1996) (citing *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S. Ct. 937 (1980); *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S. Ct. 1713 (1985)). But immunity for such actors is not automatic because they are not sovereign.[6] *Id.* Rather, to invoke state action immunity, private parties must meet two requirements set forth in *Midcal*. First, "the challenged restraint must be one clearly articulated and affirmatively expressed as state policy." *Patrick v. Burget*, 486 U.S. 94, 100, 108 S. Ct. 1658, 1663 (1998) (quoting *Midcal*, 445 U.S. at 105, 100 S. Ct. at 943). Second, "the anticompetitive conduct must be actively supervised by the state itself." *Id.* Municipalities and other political subdivisions need only satisfy the first *Midcal* prong; they need not show active supervision. *Town of Hallie*, 471 U.S. at 45–46, 105 S. Ct. at 1720.

Following this framework, this court has twice addressed whether the collateral order doctrine authorizes interlocutory appeals from a district court's denial of state action immunity. In *Martin v. Memorial Hospital at Gulfport*, 86 F.3d 1391, 1396–97 (5th Cir. 1996), this court held that "the denial of a state or state entity's motion for dismissal or summary judgment on the ground of state action immunity" is immediately appealable. The

---

that, although "the state action doctrine is often labeled an immunity, that term is actually a misnomer because the doctrine is but a recognition of the limited reach of the Sherman Act . . . ." *Acoustic Sys.*, 207 F.3d at 292 n.3. Consistent with our prior opinions, however, we continue to refer to the doctrine as one of immunity. *See generally Veritext Corp. v. Bonin*, 901 F.3d 287 (5th Cir 2018).

[6] "For purposes of *Parker*, a nonsovereign actor is one whose conduct does not automatically qualify as that of the sovereign State itself." *N.C. St. Bd. of Dental Examiners v. F.T.C.*, 574 U.S. 494, 505, 135 S. Ct. 1101, 1111 (2015). Pardon the circularity of this direct quotation.

defendant was a municipal hospital, which this court ultimately held immune under the state action doctrine. Drawing an analogy with principles that animate interlocutory appeals of government officials' claims of absolute or qualified immunity, or the Eleventh Amendment, this court reasoned that making a "state or state entity" go to trial to claim immunity renders the defense effectively unreviewable on appeal. *Id.* at 1396–97.

In *Acoustic Systems,* however, we clarified that *Martin'*s extension of the collateral order doctrine was limited "to the denial of a claim of state action immunity 'to the extent that it turns on whether a *municipality* or *subdivision* [of the state] acted pursuant to a clearly articulated and affirmatively expressed state policy.'" *Acoustic Systems, Inc. v. Wenger,* 207 F.3d 287, 291 (5th Cir. 2000) (quoting *Martin*, 86 F.3d at 1397). The defendant in *Acoustic Systems* was a private party whose status did not implicate the concerns underlying other immunity doctrines. Therefore, although the defendant could invoke the state action doctrine as a defense to liability, it could not obtain interlocutory review of the issue to avoid suit. *Id.* at 293–94. Likewise, because a defense to liability is effectively reviewable on direct appeal, the denial of state action immunity to a private party "is not an immediately reviewable collateral order." *Id.*

Neither *Martin* nor *Acoustic Systems* fits this case. In neither of those cases was the collateral order doctrine being invoked as an appendage to APA Section 704, thus neither case involved interlocutory interference with an ongoing federal regulatory proceeding. Further, in each case, applying the Supreme Court's test for state action immunity was relatively straightforward: *Martin* rested on *Town of Hallie,* 471 U.S. at 45-46, 105 S. Ct. at 1720 (holding that municipal entities, though not sovereign, may avail themselves of the immunity if their actions spring from governing state authority); Wenger, the *Acoustic Systems* defendant, could only rely on private party immunity pursuant to *Midcal*'s two-part test.

Here, the jurisdictional issue is more complex, as it concerns both an action by the FTC rather than private litigation, and it involves the Supreme Court's comparatively recent decision in *North Carolina State Board of Dental Examiners v. F.T.C.*, 574 U.S. 494, 135 S. Ct. 1101 (2015).

Taking the Supreme Court case first, apprehension over placing private practitioners in regulatory agencies constituted like this Board animated *Dental Examiner'*s application of the *Midcal* test. The Court explained that "[l]imits on state-action immunity are most essential when the State seeks to delegate its regulatory power to active market participants, for established ethical standards may blend with private anticompetitive motives in a way difficult even for market participants to discern." *Id.* at 504. Hence, it was necessary to apply *Midcal's* active supervision prong, which "demands 'realistic assurance that a private party's anticompetitive conduct promotes state policy, rather than merely the party's individual interests.'" *Id.* at 507 (quoting *Patrick*, 486 U.S. at 101, 108 S. Ct. at 1663).

The Board nevertheless argues that it is entitled to immunity from suit as a state agency, not a "purely private part[y]." But the Court has rejected such a "purely formalistic inquiry." *See Town of Hallie*, 471 U.S. at 39, 105 S. Ct. at 1716. Instead, in *Dental Examiners*, the Court distinguished "specialized boards dominated by active market participants" from "prototypical state agencies" because of the private incentives inherent in their structure. *Id.* at 511. Such "agencies controlled by market participants are more similar to private trade associations vested by States with regulatory authority . . . ." *Id.* Thus, while the Board may rightly defend its entitlement to state action immunity, it invokes the state action doctrine as a private party. *See also S.C. St. Bd. of Dentistry v. F.T.C.*, 455 F.3d 436, 439 (4th Cir. 2006); S*mileDirectClub, LLC v. Battle*, No. 19-12227, 2020 WL 4590098, at *11 (11th Cir. 2020) (Jordan, J., concurring) ("Even if we assume that a state is able to immediately appeal the denial of *Parker* immunity, an interlocutory appeal should not be available to private parties like the members of the

Georgia Board of Dentistry, whose status does not implicate sovereignty concerns.").

As a private party, the policy imperatives behind relieving the Board from suit as well as liability do not apply. *See Acoustic Systems,* 207 F.3d at 292–94. To summarize, the collateral order doctrine must be deployed narrowly and "with skepticism," and state action immunity, in particular, though it may extend to private parties, exists principally to secure the full scope of political activity for *state* actors. *Id. Dental Examiners* has intensified our skepticism of allowing an interlocutory appeal. This court aptly stated, in reference to the state action "immunity" doctrine, that "[t]he price of the shorthand of using similar labels for distinct concepts is the risk of erroneous migrations of principles." *Surgical Care Center of Hammond, LC v. Hospital Serv. Dist.,* 171 F.3d 231, 234 (5th Cir. 1999) (en banc).

Another reason for rejecting the Board's quest for collateral review is that this regulatory case was initiated by the FTC. Even if the Board were a sovereign actor, it is paradigmatic that "[s]tates retain no sovereign immunity as against the Federal Government." *West Virginia v. United States*, 479 U.S. 305, 312 n.4, 107 S. Ct. 702, 707 n.4 (1987); *see also Bd. of Dentistry*, 455 F.3d at 447 (rejecting collateral order appeal of a *Parker* immunity claim in a suit brought *by* the federal government; "because such suits do not offend the dignity of a state, sovereign immunity is no defense to such an action").

In sum, case law does not support jurisdiction based on the collateral order doctrine as applied through Section 704 of the APA. Specifically, the second and third prongs of the doctrine are not satisfied here. *Parker* immunity concerns the boundaries of federal antitrust law set against the principles of federalism and the states' authority over their economies. This court explained, "[w]hile thus a convenient shorthand, '*Parker* immunity' is more accurately a strict standard for locating the reach of the Sherman Act than the judicial creation of a defense to liability for its violation." *Surgical*

*Care Center,* 171 F.3d at 234. In this case, where the FTC challenges aspects of rate setting by the Board as restraining price competition, and the FTC rejects the sufficiency of overarching governmental supervision, an interlocutory ruling on state action immunity by this court would inevitably affect the question of liability. The issues relevant to immunity in this case pertain to the reach of the Sherman Act, consequently, a judicial decision at this point would not resolve an issue "completely separate from the merits of the action," as required by the second prong of the collateral order doctrine. *Acoustic Systems*, 207 F.3d at 290. Nor, obviously, is the state action immunity issue "effectively unreviewable on appeal from a final judgment." *Id.*;[7] *see N.C. State Bd. of Dental Exam'rs*, 717 F.3d 359, 366 (4th Cir. 2013) (considering the applicability of state action immunity in a petition for review), *aff'd*, 574 U.S. 494 (2015).

For the foregoing reasons, the April 10, 2018 order does not constitute final agency action under Section 704, and the collateral order doctrine does not apply. Consequently, the district court lacked jurisdiction over the Board's lawsuit.

---

[7] The Board relies perfunctorily on a finality test articulated in *Bennett v. Spear*, 520 U.S. 154, 117 S. Ct. 1154 (1997). *Bennett* pronounced two conditions that "must be satisfied for an agency action to be 'final'": (1) the action must "mark the consummation of the agency's decision making process," and (2) the action must be that "by which rights or obligations have been determined or from which legal consequences will flow." 520 U.S. at 177–78, 117 S. Ct. at 1168. The Board argues that the April 10, 2018 order is "independently reviewable as a 'final' order under the test articulated in *Bennett*" because the order "reflects a consummation of the decision making process" from which "legal consequences will flow, including [the Board's] legal right to immunity from trial." This is incorrect. Not only is the Board not entitled to immunity from suit, but the Commission's denial of state action immunity will affect the Board adversely only if the Commission ultimately finds the Board liable for antitrust violations. Put differently, the April 10, 2018 order "does not itself adversely affect [the Board] but only affects [its] rights adversely on the contingency of future administrative action." *Am. Airlines*, 176 F.3d at 288 (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130, 59 S. Ct. 754, 757 (1939)). The April 10, 2018 order does not constitute final agency action under *Bennett*.

### III. CONCLUSION

We **VACATE** the district court's stay order and **REMAND** with instructions to **DISMISS** the Board's lawsuit for lack of jurisdiction.